**Certiorari Granted, May 24, 2012, No. 33,592**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-076**

**Filing Date: March 29, 2012**

**Docket No. 30,470**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**VINCENT MONTOYA,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**M. Monica Zamora, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**    Defendant Vincent Montoya was charged with kidnapping, attempt to commit criminal sexual penetration (CSP), aggravated battery against a household member, and interference with communications. He was convicted of all but attempted CSP. At issue in

this appeal is whether his Confrontation Clause rights were violated by the district court's pre-trial ruling preventing him from questioning Victim about her prior sexual history with him. We hold that they were not and affirm.

## I.      BACKGROUND

**{2}**      The facts of this case are not in dispute. Defendant and Victim had been arguing. Defendant wanted to have sex with Victim, but Victim was not similarly inclined. Defendant got on top of Victim and attempted to remove her pants. Victim pushed and kicked Defendant until he stopped. Although Defendant was capable of forcing Victim to have sex with him, he did not. The two continued fighting, and Defendant bit Victim's inner thigh and pushed her over a table, hitting her head and hurting her back. Eventually, Victim's parents arrived and she was able to leave.

**{3}**      What is disputed, and what was the pivotal issue below, was Defendant's intent. Did he intend to commit a sexual offense against Victim regardless of whether she consented, or did he believe he was engaging in a consensual act of "make-up sex"? Arguing the latter, Defendant filed a motion under Rule 11-413 NMRA to introduce evidence of Victim's past sexual conduct with Defendant. Defendant represented that Victim would testify "that she believed Defendant was trying to have 'make-up sex' with her and that they had engaged in make-up sex in the past." According to Defendant, "make-up sex" meant the use of sexual intercourse as a method of resolving disputes or of reconciling subsequent to a dispute. Defendant argued that the sexual history testimony was relevant to his state of mind regarding the specific intent crimes of kidnapping and CSP because it would show that "his intent was to have consensual sexual relations with his long-time girlfriend, not to have sex with her against her will."

**{4}**      The district court denied Defendant's motion, finding that Victim's past sexual conduct was "inflammatory and prejudicial in nature and [was] not outweighed by its probative value." It ordered that Defendant was precluded from asking whether Victim and Defendant had a long-standing sexual relationship, whether Victim and Defendant "engage[d] in sexual relations after an argument to make[-]up," or whether Victim had ever not consented to Defendant's sexual advances prior to the events at issue in the case. The court noted that "Defendant's confrontation rights are implicated by the material the defense seeks to introduce but that material may be elicited by other legally proper means than through the alleged [V]ictim." A jury acquitted Defendant of attempted CSP but convicted him of kidnapping.

**{5}**      Although Defendant was prevented from introducing evidence of his sexual history with Victim, he was able to produce some evidence at trial in support of his theory that he never intended to commit a sexual offense against Victim. Notably, Victim testified that she had been Defendant's girlfriend for about two years. Victim agreed that she was not terrified that he was going to penetrate her and that penetration was not the issue. She also agreed that she perceived his advances not as an attempt to force sex on her, but as an attempt to

2

obtain her consent for sex. Finally, she agreed that she believed Defendant would not have had sex with her unless she consented.

## II.   DISCUSSION

**{6}**   Defendant makes two arguments on appeal. First, he contends that the district court erred in excluding evidence of Victim's sexual history with Defendant that Defendant believes would have negated the specific intent element of the kidnapping charge. Second, Defendant argues that it was error for the district court to instruct the jury that attempted CSP was only a general intent crime. We address each argument in turn.

### A.   The Rape Shield Rule

**{7}**   In 1975, our Legislature enacted a rape shield law which provides that

> [E]vidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

NMSA 1978, § 30-9-16(A) (1975) (amended 1993). Our Supreme Court has adopted a similar rule of evidence. *See* Rule 11-413(A). For convenience, we will confine our discussion to the rule in this Opinion. The rule confers upon the district court discretion to exclude evidence of past conduct. *See id.* However, "[i]f application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield." *State v. Johnson*, 1997-NMSC-036, ¶ 24, 123 N.M. 640, 944 P.2d 869.

**{8}**   Defendant's rape shield argument breaks down into two parts: (1) a constitutional component under the Confrontation Clause; and (2) an evidentiary component, looking at the district court's application of the rule. The admissibility of evidence under the rape shield rule is separate from the objection based on the Confrontation Clause. *Cf. State v. Henderson*, 2006-NMCA-059, ¶ 8, 139 N.M. 595, 136 P.3d 1005 (noting that a hearsay objection to pre-trial testimony was separate from a Confrontation Clause objection to the same testimony). We begin with the Confrontation Clause because, as we discuss below, the rape shield rule must yield when exclusion of the evidence would violate a defendant's confrontation rights. First, however, we must discuss the standard of review.

### 1.   Standard of Review

**{9}**   Our Supreme Court has sent confusing signals regarding the standard of review for cases involving both the rape shield rule and the Confrontation Clause. Most recently, in a case that dealt exclusively with the confrontation implications of the rape shield rule, the

3

Court stated that we review decisions to exclude evidence under the rape shield rule for abuse of discretion. *State v. Stephen F.*, 2008-NMSC-037, ¶ 8, 144 N.M. 360, 188 P.3d 84. However, other cases indicate that we review Confrontation Clause issues de novo. *See, e.g.*, *State v. Lopez*, 2011-NMSC-035, ¶ 10, 150 N.M. 179, 258 P.3d 458; *State v. Lasner*, 2000-NMSC-038, ¶ 24, 129 N.M. 806, 14 P.3d 1282. In *State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419, our Supreme Court noted that the right to confrontation is not absolute, and the district court retains wide latitude to limit cross-examination. This language would seem to implicate an abuse of discretion standard, but in its ruling the Court held that "under the de novo standard, . . . the trial court acted within its 'wide latitude.'" *Id.* We find it necessary to review the case history in this area to clarify the standard of review applicable.

{10} In *Johnson*, the Court first considered the tension between the defendant's confrontation right to cross-examine witnesses and the state's interest in protecting the victims' privacy under the rape shield rule. The Court framed the issue by observing that "evidence of prior sexual conduct *must be admitted* if a defendant shows that evidence implicates his or her constitutional right of confrontation." 1997-NMSC-036, ¶ 22 (emphasis added); *id.* ¶ 24 ("If application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield."). Citing a Wisconsin case, the Court adopted a five-prong test as a non-exclusive framework for "establish[ing] a constitutional right to present evidence otherwise excluded by" the rape shield rules:

> (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; [and] (5) whether the probative value of the evidence outweighs its prejudicial effect[.]

*Id.* ¶¶ 27-28. It concluded that "a showing sufficient under the five-pronged . . . test establishes a constitutional right to present evidence otherwise excluded by our statute." *Id.* ¶ 28. This statement evokes a de novo determination regarding a constitutional right.

{11} However, in the same paragraph, it characterized the confrontation right as merely "inform[ing] the [district] court's exercise of discretion under the statute and rule," a characterization that speaks to the abuse of discretion review normally associated with the application of a rule of evidence. *Id.* At first glance, this latter statement seems to be in conflict with the earlier invocation of a de novo standard of review.

{12} After setting forth these apparently contradictory standards, *Johnson* concluded that the defendant had not made any argument that implicated his right to confrontation. *Id.* ¶ 29. The Court concluded that the contested evidence did not support a theory of relevance other than propensity. *See id.* ¶¶ 39-40. It appears to have reached this conclusion as a matter of

4

law, reasoning that the evidence offered was not probative of motive to fabricate and therefore did not implicate the defendant's right to confrontation. *See id.* ¶ 29. Having rejected the confrontation objection, *Johnson* held that the district court had not abused its discretion in applying the rape shield rule to exclude the evidence of prostitution. *Id.* ¶ 40. The Court did not apply the test it had just announced to either the confrontation or the rape shield analysis.

{13} Our Supreme Court revisited the tension between the rape shield rule and the Confrontation Clause in *Stephen F.* Although the opinion discussed only the confrontation issue, the Court reviewed the district court's action for abuse of discretion. *See* 2008-NMSC-037, ¶ 8. It employed a two-step process. First, as in *Johnson*, the Court required the defendant to "establish a valid theory of relevance and . . . support that theory with adequate facts showing a nexus between his proffered evidence and his theory." *Stephen F.*, 2008-NMSC-037, ¶ 36. Second, the Court balanced the State's interest in excluding the evidence against the victim's confrontation rights, which it viewed through the lens of the *Johnson* factors. *Stephen F.*, 2008-NMSC-037, ¶¶ 28-31.

{14} Applying this process, the Court examined the *Johnson* factors, which it said aided "in determining whether the defendant has adequately established his theory of relevance." *Stephen F.*, 2008-NMSC-037, ¶ 8. First, it concluded that because the second factor was not relevant, this Court had not erred in disregarding it. *See id.* ¶¶ 12-17. The Court noted that the third factor, which is "designed to help the court determine the relevancy of [a] defendant's theory," was met because the defendant was attempting to show the witness's motive to lie. *Id.* ¶ 19. Furthermore, the Court concluded that the testimony was necessary to the defendant's case because without it, his "argument that [the witness] had a motive to lie became groundless and ineffective." *Id.* ¶ 21. The Court concluded that the defendant's constitutional right to cross-examine the victim had been violated. *Id.* ¶ 38.

{15} Our understanding of *Stephen F.* is as follows. The Court applied an abuse of discretion standard. However, implicit in the standard in this context is that we review the application of the law to the facts de novo, and that a district court abuses its discretion when it bases its decision on a misapprehension of the law. *See, e.g.*, *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232 ("A misapprehension of the law upon which a court bases an otherwise discretionary evidentiary ruling is subject to de novo review."). The abuse of discretion review employed in *Stephen F.* thus encompasses both a de novo review of whether the confrontation right is implicated and a de novo review of whether restrictions on cross-examination were within the district court's "wide latitude." *See* *Gonzales*, 1999-NMSC-033, ¶ 22 (internal quotation marks and citation omitted).

{16} Consistent with this view, we observe in *Johnson* and *Stephen F.* three different questions subject to three different standards of review. First, in both *Johnson* and *Stephen F.*, the Court first reviewed de novo whether the theory upon which the defendant sought to introduce evidence implicated his confrontation rights. In *Johnson*, the defendant's confrontation rights were not implicated, and the inquiry ended. In *Stephen F.*, the

5

defendant's confrontation right to show the witness's motive to lie was implicated, and the inquiry proceeded.

**{17}** The Court in *Stephen F.* next proceeded to the second step, balancing "the [s]tate's interest in applying the rape shield [rule]" against "the effect that excluding the evidence had on [the defendant's] constitutional rights." 2008-NMSC-037, ¶¶ 28, 31. It measured the defendant's rights by examining the *Johnson* factors and by analogizing to other cases. *Stephen F.*, 2008-NMSC-037, ¶¶ 31-36. The Court appears to have undertaken this balancing de novo as well. We understand this balancing test to represent an inquiry into the district court's ability to restrict the scope of cross-examination under the Confrontation Clause. We believe this is consistent with our Supreme Court's cases that review restrictions on the scope of cross-examination de novo to determine if the district court acted within its wide discretion. *See Gonzales*, 1999-NMSC-033, ¶ 22.

**{18}** The third and final step is the review of the application of the rule itself—as distinguished from the Confrontation Clause implications—for abuse of discretion. In *Stephen F.*, this was not necessary, as the Court reversed on the Confrontation Clause issue. In *Johnson*, the Court simply stated that it "believe[d] the [district] court's explanation of its reasons for excluding the evidence show[ed] that it exercised its discretion and reached a result a judge reasonably might reach on the arguments and evidence." 1997-NMSC-036, ¶ 40. This is consistent with how evidentiary decisions are generally reviewed. *See, e.g.*, *Martinez*, 2008-NMSC-060, ¶ 10.

**{19}** In summary, we discern three steps and three standards of review in our case law regarding application of the rape shield rule. First, we review de novo whether a defendant has presented a theory of admissibility that implicates his confrontation rights. If he has, we undertake a de novo balancing of the state's interest in excluding the evidence against the defendant's constitutional rights to determine if the district court acted within the wide scope of its discretion to limit cross-examination. If the Confrontation Clause is not implicated or if there has been no Confrontation Clause violation, we examine whether the district court has abused its discretion in its application of the rule itself. In practice, some or all of these inquiries appear to have been merged in the *Johnson* factors, but need not be analyzed in that manner. With this framework in mind, we proceed to the facts of the case before us.

## 2. Confrontation Clause

**{20}** Defendant argues that the exclusion of evidence of Victim's sexual history with him violated his confrontation rights. In support, he contends that the evidence was relevant to his intent and that therefore the evidence was offered under "a theory of relevance other than propensity." He does not argue that he was prevented from showing Victim's bias or otherwise attacking her credibility. Instead, his argument is that he was prevented from challenging an opposing version of the facts.

6

**{21}** "The Confrontation Clause of the Sixth Amendment is made applicable to the states through the Fourteenth Amendment." *State v. Lopez*, 2000-NMSC-003, ¶ 14, 128 N.M. 410, 993 P.2d 727. The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. Amend. VI. "The most important element of the right of confrontation is the right of cross-examination." *State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Although the right to cross-examination is a crucial benefit of confrontation, it is not absolute:

> The trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish.

*Sanders*, 117 N.M. at 459, 872 P.2d at 877 (alterations, internal quotation marks, and citations omitted).

**{22}** Our appellate courts have found confrontation violations when a defendant was prevented from putting on evidence regarding the bias or credibility of a witness. *See, e.g.*, *Stephen F.*, 2008-NMSC-037, ¶ 31 (finding a confrontation violation when the district court prevented cross-examination necessary to show a witness's motivation to lie); *State v. Martinez*, 1996-NMCA-109, ¶ 17, 122 N.M. 476, 927 P.2d 31 (finding a confrontation violation when a defendant was restricted from cross-examining a witness regarding bias towards the state); *accord Sanders*, 117 N.M. at 460, 872 P.2d at 878 (holding that there was no confrontation violation when the excluded evidence did not reflect the witness's bias, motivation to lie, or credibility). Federal cases have reached similar results. *See, e.g.*, *Davis*, 415 U.S. at 317-18 (holding that it was error to prohibit cross-examination of a witness on bias he might have due to his status as a probationer).

**{23}** In the instant case, Defendant concedes that neither bias nor credibility is at issue. Instead, he rests his Confrontation Clause argument on his inability to challenge an opposing version of the facts. This language comes from *Johnson*, where our Supreme Court stated that "[a] defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, *and otherwise challenge an opposing version of facts*—is a critical limitation on the [district] court's discretion to exclude evidence a defendant wishes to admit." 1997-NMSC-036, ¶ 23 (emphasis added). Specifically, Defendant argues that this language confers upon him the right to elicit from Victim testimony that the acts occurred "in the context of a long sexual relationship that included 'make[-]up sex' used to resolve arguments."

7

**{24}** We do not agree with Defendant's reading of this language from *Johnson*. Under Defendant's interpretation, this language would turn any limitation on cross-examination—regardless of its relation to bias, credibility, and motive to lie—into a violation of the Confrontation Clause. We do not believe this is the effect that our Supreme Court intended. As the Court has stated, "[t]he Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." *Sanders*, 117 N.M. at 459, 872 P.2d at 877 (internal quotation marks and citation omitted). Defendant's proposed reading of *Johnson* is in direct contradiction to the Court's observation that " 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *State v. Meadors*, 121 N.M. 38, 49, 908 P.2d 731, 742 (1995) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (alteration in original)).

**{25}** We understand the "challenge an opposing version of facts" language in *Johnson* to refer to a defendant's confrontation right to challenge the truth and accuracy of a witness's testimony through cross-examination. 1997-NMSC-036, ¶ 23; *see Davis*, 415 U.S. at 316 ("Cross-examination is the principal means by which the believability of a witness *and the truth of his testimony* are tested." (Emphasis added)); *but see Stephen F.*, 2008-NMSC-037, ¶ 6 ("[A] court's decision to restrict a defendant's ability to confront a witness, even when based on legitimate state interests, 'calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined.' " (quoting *Chambers v. Miss.*, 410 U.S. 284, 295 (1973)). Here, Defendant sought not to confront Victim, but to use her to introduce additional substantive evidence unrelated to the truth or accuracy of her testimony. While there may be some cases in which a defendant's confrontation rights are violated by the restriction of cross-examination regarding sexual history evidence not related to bias or credibility, we do not believe this is one of them.

**{26}** We conclude that Defendant's confrontation rights were neither implicated nor violated. Defendant has explicitly disclaimed reliance on the theories of relevance our cases have indicated are critical to the right to cross-examine. Furthermore, we reject his contention that *Johnson*'s language regarding challenging opposing versions of the facts creates a confrontation right to question witnesses on topics not relevant to the truth or accuracy of the witness's testimony. We hold that as a matter of law, Defendant has not shown that he has a theory of relevance implicating his right to confront Victim, and therefore his confrontation rights were not violated.

### 3.    Evidentiary Ruling

**{27}** We proceed to the question of whether the district court abused its discretion in applying the rape shield rule. We have chosen to analyze this in light of the *Johnson* factors. *See Stephen F.*, 2008-NMSC-037, ¶ 8 (suggesting the *Johnson* factors as one possible

framework a district court could use in exercising its discretion under the rape shield rule). Under the circumstances of this case, we cannot characterize the district court's ruling as "clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Looking to the *Johnson* factors, there were several that Defendant was unable to prove. Neither party contests the first factor, that Victim had an ongoing sexual relationship with Defendant which included make-up sex. We examine each of the remaining four factors in turn.

**{28}** Before doing so, however, we must briefly address the somewhat unusual procedural posture of this rape shield case. Defendant was acquitted of attempted CSP but convicted of kidnapping, which required the State to prove that he intended to commit "a sexual offense." By its terms, the rape shield rule does not apply to kidnapping. *See* Rule 11-413(A) (limiting the rule to "prosecutions [pursuant to] . . . [NMSA 1978, Sections 30-9-11 to -15 (1975, as amended through 2009")); Section 30-9-16 (same); NMSA 1978, § 30-4-1 (2003) (defining kidnapping). However, it does apply to attempted CSP. *See* § 30-9-11 (defining CSP). Thus, although only the kidnapping conviction is at issue on this appeal, we must also consider the effect of the evidence on the attempted CSP charge of which Defendant was acquitted. With respect to kidnapping, Defendant's intent to commit a sexual offense is at issue. But we must also keep in mind that the excluded evidence was relevant to Victim's consent in the attempted CSP charge.

**{29}** Returning to the *Johnson* factors, we begin with the second factor, "whether the circumstances of the prior acts closely resemble those of the present case." Defendant claims the circumstances of the charged incident are similar to the previous make-up sex in that "the couple had resolved arguments in the past by having sex." The State counters that "[V]ictim told defense counsel that [the] incident involved in this case[] was different than any other time they had sex in the past and that [D]efendant's behavior during this incident was not normal."

**{30}** The district court could reasonably have found against Defendant on this factor. First, the court could have concluded that Defendant's arguments under this factor were the sorts of propensity arguments that the rule seeks to exclude. With respect to the CSP charge, the district court could reasonably conclude that the similarity of circumstances was primarily a propensity argument—that because Victim had consented on previous occasions, she consented on this occasion. Regarding the kidnapping charges, the court could also have concluded that the similarity of circumstances was a propensity argument, albeit a strange one—because Victim had engaged in legal consensual make-up sex in the past, Defendant restrained her on this occasion on the expectation that legal consensual make-up sex would once again ensue. Indeed, this appears to be the exact argument Defendant makes on appeal.

**{31}** Regarding the fourth factor, "whether the evidence is necessary to the defendant's case," Defendant argues that without the evidence of their history of make-up sex, the jury was led to an inference that Defendant "was acting in anger, indifferent to [Victim's] wishes, and that he intended to rape." The State contends that Defendant presented substantial

9

circumstantial evidence of his intent by showing (1) that Defendant and Victim had been dating for two years, (2) that Defendant was strong enough to have forced sex upon her without consent but did not, (3) that Victim viewed Defendant's actions as an attempt to obtain her consent, (4) that Victim was not terrified of being penetrated and did not think penetration was the issue, and (5) that Victim believed Defendant did not have sex with her because she did not consent. According to the State, the sexual history was therefore merely cumulative. We agree with the State. Significant evidence was introduced that was relevant to Defendant's intent. Evidence of Defendant's sexual history with Victim was not necessary in order to prove that he did not intend to commit a sexual offense.

**{32}** Finally, with respect to the fifth factor, "whether the probative value of the evidence outweighs its prejudicial effect," Defendant baldly asserts that the sexual history is highly probative, and that "[i]ts only discern[able] 'prejudicial' effect was to negate the State's theory of prosecution." However, as we discussed above, the probative value was diminished in light of the significant amounts of admissible evidence regarding Defendant's intent, and the sexual history evidence was useful primarily to show propensity. Further, the district court found that testimony about Victim's sexual history was "inflammatory and prejudicial in nature." We conclude that the restriction was within the wide scope of permissible limitation on cross-examination. *See Gonzales*, 1999-NMSC-033, ¶ 22. We cannot say the district court abused its discretion in denying Defendant's Rule 11-413 motion.

## B.    Jury Instructions

**{33}** Defendant's second argument is that errors in the jury instructions require the reversal of his kidnapping conviction. The State contends that this argument was not preserved and that we should therefore review only for fundamental error. We do not reach the question of whether there was fundamental error because no error exists.

**{34}** Defendant apparently concedes that his late objection to the instructions was insufficient to preserve the issue, arguing only that the instructions, combined with the district court's refusal to clarify those instructions in response to jury questions, was fundamental error.

**{35}** In *State v. Benally*, our Supreme Court observed:

> The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.

10

2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). The difference is that, "[u]nder fundamental error review, . . . the jury verdict will not be reversed unless necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted).

**{36}** *Benally* is directly on point to the instant case. In *Benally*, a defendant who had been convicted of second-degree murder argued that incorrect jury instructions "prevented the jury from appreciating that the [s]tate had the burden of disproving self- defense." 2001-NMSC-033, ¶ 1. Instruction 12, which set forth the elements for second-degree murder, did not include the element of unlawfulness. *Id.* ¶ 10. Additionally, instruction 15, which defined self-defense, did not set forth the burden of proof. *Id.* ¶ 11. However, a second self-defense instruction, instruction 25, was also given that correctly set forth the burden of proof but that applied to the separately charged crimes of aggravated battery and voluntary manslaughter. *See id.* ¶¶ 17, 25 (Baca, J., dissenting).

**{37}** The Court addressed the question of whether instruction 25 "was capable of rescuing the jury from the confusion that stemmed from the omission in instruction 12." *Id.* ¶ 17. It began with "the common sense proposition that the jury understands the inclusion and omission of language in a jury instruction to reflect the intent of its author." *Id.* ¶ 18. The Court concluded that jurors would have understood the omission of burden of proof language in instructions 12 and 15 to be intentional and proceeded to address whether jurors would have thought that the language in instruction 25 applied not only to the offenses it addressed, but also to those addressed by instructions 12 and 15. *See id.* But "[n]othing on the face of the instructions, nor in their placement, suggested to the jury that . . . instruction 25 applied to second-degree murder." *Id.* ¶ 19. The correct instruction was separated from the second-degree murder instruction by thirteen other instructions. *Id.* An additional instruction informed the jury that each crime charged should be considered separately. *Id.* ¶ 20.

**{38}** We conclude that, under the reasoning from *Benally*, a reasonable juror would not have been confused or misdirected into concluding that only general intent was required in order to convict Defendant of kidnapping in this case. By its terms, the general intent instruction in this case applied only to "criminal sexual penetration, aggravated battery against a household member without great bodily harm, and interference with communications." We conclude that, as in *Benally*, a jury would have understood that the inclusion of these three crimes and the omission of kidnapping was intentional. Also like *Benally*, the kidnapping instruction was separated from the general intent instruction by the numerous (in this case, ten) instructions setting forth the elements of the three crimes to which the general intent instruction did apply. Finally, as in *Benally*, the jury was instructed that "[e]ach crime charged in the indictment should be considered separately." Accordingly, we conclude that a reasonable juror would have arrived at a correct understanding of the intent element of kidnapping from the instructions in this case. As we find no error, we need not decide whether there was fundamental error.

## III. CONCLUSION

**{39}** For the foregoing reasons, we affirm.

**{40} IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for** _State v. Montoya_**, No. 30,470**

**APPEAL AND ERROR**
Fundamental Error
Preservation of Issues for Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Confrontation
Right to Confrontation

**CRIMINAL LAW**
Attempt
Criminal Sexual Penetration
Kidnapping

**CRIMINAL PROCEDURE**
Right to Confrontation

**EVIDENCE**
Prejudicial Evidence
Probative Value vs. Prejudicial Effect

**JUDGES**
Abuse of Discretion

**JURY INSTRUCTIONS**

Criminal Jury Instruction