This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **No. 31,957**

**ARNOLDO AGUILAR,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Judge.**

{1}     Defendant appeals his conviction for one count of second degree criminal sexual penetration of a minor between the ages of thirteen and eighteen (CSPM). *See* NMSA 1978, § 30-9-11(E)(1) (2009).  He contends that the district court erred in excluding any questioning or evidence about the victim's prior sexual activities that would tend to establish the victim's sexual orientation.  He also contends that there was insufficient evidence to support his conviction and that the district court erred in refusing to grant a mistrial due to improper communications between the district court staff and the jury.

{2}     We disagree with Defendant and hold that any evidence relating to the victim's prior sexual activities or his sexual orientation was properly excluded under NMSA 1978, § 30-9-16(A) (1993), the "rape shield statute," and the corresponding evidentiary rule, Rule 11-413 NMRA (recompiled as Rule 11-412 NMRA effective June 16, 2012, but referred to in this opinion as Rule 11-413), and that the exclusion did not violate Defendant's confrontation and due process rights.  We also hold that there was sufficient evidence to support Defendant's conviction, and we reject Defendant's contention that the district court should have granted a mistrial.

**BACKGROUND**

{3}     Because the parties are familiar with this case and because this is a memorandum opinion, we do not provide a summary of the factual and procedural

background. We discuss the facts where relevant to the issues addressed in this opinion.

**DISCUSSION**

**The Exclusion of Evidence Regarding C.N.'s Sexual Orientation and Prior Sexual Conduct**

{4}     The rape shield statute and corresponding evidentiary rule, which we combine and refer to as the "rape shield law," reflect this State's strong public policy "to prevent unwarranted intrusions into the private affairs of the victims of sex crimes." *State v. Romero*, 1980-NMCA-011, ¶ 21, 94 N.M. 22, 606 P.2d 1116, *overruled in part on other grounds by State v. Johnson*, 1997-NMSC-036, 123 N.M. 640, 944 P.2d 869. Section 30-9-16(A) of the rape shield statute provides in part:

> [E]vidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

*See also* Rule 11-413(A) NMRA (2011) (providing in part that "evidence of the victim's past sexual conduct . . . shall not be admitted unless . . . that evidence . . . is material and relevant to the case [and its] inflammatory or prejudicial nature does not outweigh its probative value").

{5}     Despite its protections, the rape shield law is not an absolute bar to the admission of evidence regarding an alleged victim's sexual history, and its purpose

3

is "not to remove relevant evidence from the jury's consideration." *Johnson*, 1997-NMSC-036, ¶ 21 (internal quotation marks and citation omitted). The rape shield law will not preclude the admission of relevant evidence "when the probative value of that evidence equals or outweighs its prejudicial effect." *Id.* ¶ 19. And, in order to ensure that a defendant is not deprived of his constitutional right to confront the witnesses against him, the district court must admit evidence, even if it is otherwise subject to exclusion under the rape shield law, if exclusion of that evidence would violate the defendant's constitutional rights. *See State v. Johnson*, 1984-NMCA-094, ¶ 31, 102 N.M. 110, 692 P.2d 35, *overruled in part on other grounds by Manlove v. Sullivan*, 1989-NMSC-029, ¶ 12 n.2, 108 N.M. 471, 775 P.2d 237, *as recognized in State v. Scott*, 1991-NMCA-081, ¶ 16, 113 N.M. 525, 828 P.2d 958.

{6}     Defendant claims that, despite the provisions of the rape shield law, the exclusion of evidence regarding C.N.'s prior homosexual activities violated Defendant's rights to due process and to confront the witnesses against him.

**Preservation**

{7}     Initially, we address the State's contention that Defendant's arguments should be summarily rejected because he failed to preserve them. The State makes two arguments in this regard: (1) that Defendant failed to comply with the rape shield law by seeking an in-camera hearing, *see* § 30-9-16(C) (stating that if the defendant

proposes to offer evidence otherwise excluded pursuant to subsection A, "the defendant shall file a written motion prior to trial [and t]he [district] court shall hear the pretrial motion prior to trial at an in[-]camera hearing"); and (2) that Defendant failed to preserve his challenge to the exclusion of the evidence on constitutional grounds because his arguments below were based only on the state evidentiary rules.

{8} We conclude that Defendant properly preserved his arguments. First, with respect to the matter of an in-camera hearing, Defendant initially mentioned the evidence of C.N.'s alleged homosexuality in his response to the State's motion to exclude impermissible character evidence. Defendant claimed that there was a dispute as to whether C.N. is bisexually- or homosexually-oriented, and he stated that C.N. and Fabian Peralta had admitted to engaging in homosexual activities short of intercourse. And, at the hearing on the State's motion, Defendant informed the district court of the evidence he sought to admit to establish these admissions. Thus, because Defendant made his motion before the beginning of trial and because the district court considered the evidence during the hearing on the State's motion, we are not convinced that Defendant failed to request, or that the district court failed to conduct, an in-camera hearing pursuant to the rape shield law. *See Johnson*, 1997-NMSC-036, ¶ 20 (observing that the in-camera hearing is to provide the parties with "a formal

opportunity to inform the [district] court of the relevant facts, . . . make the arguments of relevancy, and explain the respective positions on balancing").

{9}      Second, with respect to the State's argument that Defendant failed to preserve his constitutional arguments, we conclude that Defendant adequately preserved these issues by arguing that he had a right to confront C.N. by cross-examining him about his prior homosexual activity and his sexual orientation, even though Defendant never specifically asserted the constitutional provisions in question. *See id.* ¶¶ 23-24 (recognizing that the defendant's right of confrontation limits the district court's discretion to exclude evidence that a defendant wants to admit and recognizing the confrontation issues inherent in excluding what might be relevant evidence); *State v. Stephen F.*, 2007-NMCA-025, ¶ 18, 141 N.M. 199, 152 P.3d 842 (holding that "[a district] court *must* consider a defendant's confrontation rights in exercising its discretion to admit or exclude evidence of [prior sexual conduct]"), *aff'd*, 2008-NMSC-037, 144 N.M. 360, 188 P.3d 84. Moreover, none of the cases cited by the State in support of its contention that Defendant failed to preserve his constitutional challenge involve the exclusion of evidence under the rape shield law. *See, e.g.*, *State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (considering whether the foundational requirements were met for admission of breath

6

alcohol test results and reviewing the defendant's Confrontation Clause challenge to the admission of those results only for fundamental error due to lack of preservation).

**Standard of review**

{10}    We review the district court's decision to exclude evidence of C.N's prior sexual conduct pursuant to the rape shield law for abuse of discretion. *See Stephen F.*, 2008-NMSC-037, ¶ 8; *Johnson*, 1997-NMSC-036, ¶ 40. However, "we review de novo the question of whether the Confrontation Clause has been violated." *State v. Smith,* 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254; *see State v. Montoya*, 2013-NMCA-076, ¶ 19, ___ P.3d ___, *cert. granted*, 2012-NMCERT-005, 294 P.3d 446.

{11}    In *Montoya*, this Court recently discussed and attempted to clarify the standard of review applied by our Supreme Court in *Johnson* and *Stephen F.* in determining whether the district court erred in excluding evidence pursuant to the rape shield law. *Montoya*, 2013-NMCA-076, ¶¶ 9-19. We observed:

> [W]e discern three steps and three standards of review in our case law regarding application of the rape shield [law]. First, we review de novo whether a defendant has presented a theory of admissibility that implicates his confrontation rights. If he has, we undertake a de novo balancing of the state's interest in excluding the evidence against the defendant's constitutional rights to determine if the district court acted within the wide scope of its discretion to limit cross-examination. If the Confrontation Clause is not implicated or if there has been no Confrontation Clause violation, we examine whether the district court has abused its discretion in its application of the [law] itself.

7

*Id.* ¶ 19. We address each of the three steps mentioned in *Montoya* in order.

**First Step: Theory of Admissibility Implicating Confrontation Rights**

{12}     Defendant claims that the evidence of C.N.'s prior homosexual conduct should have been admitted because it tends to establish C.N.'s sexual orientation, which is in turn relevant to C.N.'s possible motive for lying. *See Stephen F.*, 2008-NMSC-037, ¶¶ 19, 21 (recognizing that cross-examination regarding prior sexual conduct may be allowed if the evidence suggests that the victim had a motive to lie). He claims that C.N. had a motive to lie because people do not understand homosexual relationships and because, as a minority of the population, homosexuals are more likely to keep their relationships and their orientation a secret. Further, he argues that C.N. had a motive to lie to avoid having to complete a substance abuse rehabilitation program. The exclusion of this evidence, he maintains, violated his right to a fair trial under the Sixth Amendment right to confront the witnesses against him.

{13}     We are not convinced because Defendant failed to establish "a valid theory of relevance" and he failed to support "that theory with adequate facts showing a nexus between his proffered evidence and his theory." *Stephen F.*, 2008-NMSC-037, ¶ 36. Review of the record and transcript indicates that Defendant failed to introduce any other argument or evidence in district court suggesting that C.N. had a motive to lie. To the contrary, in his motion Defendant expressly stated that he was seeking to

introduce evidence of C.N.'s prior sexual activities and alleged sexual orientation to support a defense of consent and "to rebut the natural tendency to believe that a heterosexual male would never consent to anal intercourse with another male." And, regarding Defendant's claim that he was precluded from introducing evidence showing that C.N. allegedly fabricated the sexual assault by Defendant in order to be allowed to withdraw from rehabilitation, the record indicates that Defendant was allowed to introduce this evidence and did so without referring to C.N.'s prior sexual conduct or sexual orientation.

**{14}** Based upon the foregoing, Defendant has failed to establish a theory of relevance implicating the Confrontation Clause. *See Johnson*, 1997-NMSC-036, ¶¶ 10, 29 (holding that the evidence offered by the defendant was not probative of a motive to fabricate and therefore did not implicate the defendant's right to confrontation). Therefore, we reject Defendant's contention that exclusion of the evidence violated his confrontation rights.

**Third Step: Whether the Application of the Rape Shield Law Constituted an Abuse of Discretion**

**{15}** Because we have concluded that Defendant has not presented a theory of admissibility implicating his confrontation rights, we skip the second step outlined in *Montoya*, which is to balance the State's interest against Defendant's constitutional rights. *See Montoya*, 2013-NMCA-076, ¶ 16. This brings us to the third step, which

9

is to determine whether the district court abused its discretion in excluding the evidence pursuant to the rape shield law. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{16}    Defendant sought to introduce evidence of C.N.'s conduct in "messing around with" Peralta, claiming it was indicative of C.N.'s sexual orientation, which is in turn relevant to the issue of whether C.N. consented to anal intercourse with Defendant. Such evidence, although short of intercourse, is shielded from disclosure under the rape shield law as evidence of C.N.'s "past sexual conduct." *See* § 30-9-16(A); *State v. Casillas*, 2009-NMCA-034, ¶ 26, 145 N.M. 783, 205 P.3d 830 (excluding the victim's prior allegations that a classmate "had brushed a hand against her buttocks" pursuant to Section 30-9-16(A) because the "prior allegations related to [the] [v]ictim's reputation for past sexual conduct"); *Johnson*, 1984-NMCA-094, ¶ 32 (stating that "the wording of the [rape shield law] is not limited to sex by consent, rather, its unlimited wording applies to all sexual conduct"); *see also People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996) (en banc) (holding that "[e]vidence of past sexual conduct is closely related to evidence of sexual orientation" and therefore concluding that the "prohibition against evidence of a rape victim's past sexual

10

conduct also precludes evidence of sexual orientation"). Thus, we consider whether the district court erred in failing to admit the evidence because it was "material and relevant to the case" and its probative value outweighed any potential prejudice. Rule 11-413(A) (2011); *see* § 30-9-16(A).

{17} In determining whether the district court abused its discretion, we choose to analyze Defendant's contentions in light of the five factors set forth in *Johnson*:

> (1) [W]hether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; [and] (5) whether the probative value of the evidence outweighs its prejudicial effect[.]

1997-NMSC-036, ¶ 27; *see Stephen F.*, 2008-NMSC-037, ¶ 8 (condensing six factors mentioned in *Johnson* to five factors). Given that C.N. and Peralta apparently told the investigating officer that they engaged in "messing around" or "fooling around," Defendant has established the first *Johnson* factor. *See Johnson*, 1997-NMSC-036, ¶ 27 ("[T]here is a clear showing that the complainant committed the prior acts[.]"). However, with respect to the second factor, the acts of kissing or "messing around," which Defendant characterizes as "homosexual conduct," stop far short of anal penetration and thus in no way "closely resemble [the acts] of the present case." *Id.*

{18} Defendant claims these acts are similar because they involve a consensual encounter, and Defendant claims that his encounter with C.N. was also consensual.

11

We disagree because C.N.'s sexual activities with a third party, Peralta, have very little probative value on the issue of whether C.N. consented to anal intercourse with Defendant, both because C.N. did not commit these acts with Peralta and because these acts are dissimilar from the anal intercourse that underlies the criminal charge.

{19}    Turning to the third factor, whether the evidence is "clearly relevant to a material issue, such as identity, intent or bias," Defendant contends that the excluded evidence is relevant to a material issue because it shows that C.N. had a motive to lie. *Johnson*, 1997-NMSC-036, ¶ 27. For the reasons discussed in analyzing Defendant's challenge pursuant to the Confrontation Clause, we disagree that Defendant presented any argument to the district court to establish that the excluded evidence was relevant to a motive to lie.

{20}    To the extent Defendant argues that the district court should have admitted the evidence of prior conduct based on relevance to consent, admission of that evidence would explicitly violate the policies behind the rape shield law because "the rape shield laws were designed to prohibit" admission in such cases. *Stephen F.*, 2008-NMSC-037, ¶ 13 (recognizing that the details about the victim's prior consensual sexual acts with her boyfriend and the nature of those acts were "not relevant [and] admission of those details would run afoul of our rape shield law" because such evidence is an attempt to introduce evidence "only to show propensity"); *see Johnson*,

12

1997-NMSC-036, ¶ 34 ("The evidence offered should be relevant to a defense theory other than a theory based on propensity[.]").

{21}     As to the fourth factor, Defendant claims that the evidence was necessary to his defense because he needed to rebut the jury's presumption of heterosexuality so that he could establish the possibility of a consensual homosexual encounter. *See Johnson*, 1997-NMSC-036, ¶ 27. He claims that he had no other way to present evidence of C.N.'s sexual orientation. We are unpersuaded because we do not agree that proof of C.N.'s sexual orientation was relevant, much less necessary, to Defendant's case based on the State's theory.

{22}     The State's theory was not that C.N. failed to consent but that he was unable to consent because he was unconscious. The record indicates that Defendant submitted significant evidence in support of his defense that C.N. was lying when he said he was unconscious. Defendant submitted testimony and evidence indicating that C.N. failed to report the crime for many months, C.N. used methamphetamine and said he would do anything for drugs, C.N. may have lied to get released from rehabilitation, and C.N.'s testimony about what happened with Defendant was both contradicted and uncorroborated. Therefore, any evidence of C.N.'s prior sexual conduct or sexual orientation was not necessary to Defendant's case.

13

{23} We are also not persuaded that this Court's opinion in *State v. Payton*, 2007-NMCA-110, 142 N.M. 385, 165 P.3d 1161, warrants a different result because Defendant needed to rebut the presumption of heterosexuality. *Id.* ¶¶ 1, 4-15 (holding that the defendant should have been entitled to show that the alleged victim, an eight-year-old child, had an alternative source of sexual knowledge because otherwise, the jury would presume that the alleged victim knew of sexual matters because the defendant had molested her). Defendant did not need to rebut the presumption of heterosexuality because C.N.'s sexual orientation was not necessary to Defendant's case, and the State did not attempt to put C.N.'s sexual orientation at issue. *See id.* ¶ 10 (recognizing that "the prosecutor relied on the natural assumption that young girls are sexually naive" during closing).

{24} Defendant did not argue, nor did he attempt to establish in district court, that the presumption of heterosexuality is "entrenched." *See id.* ¶ 11 (recognizing that the assumption of sexual naivete in a child under the age of nine is entrenched). In his brief in chief, Defendant cites to authority that allegedly states that only three and one-half percent of American adults identify themselves as gay, lesbian, or bisexual. However, he did not present this authority to the district court, so we will not consider it on appeal. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

**{25}** Defendant also argues that the evidence is necessary because the case rests on witness credibility, and "[i]t strains credibility that a person of any sexual orientation would enter a room and slap the buttocks of a stranger before ultimately taking advantage of that stranger once he became fortuitously unconscious." While the State's theory that C.N. was unconscious or unable to consent may "strain[] credibility," that was the theory presented to the jury, and they chose to believe it without any evidence or testimony as to C.N.'s sexual orientation. *See State v. Sosa*, 2000-NMSC-036, ¶ 8, 129 N.M. 767, 14 P.3d 32 ("[C]redibility of witnesses is for the jury."). Therefore, we reject Defendant's argument that evidence of C.N.'s prior sexual activity or sexual orientation was relevant, much less necessary, to his defense.

**{26}** As to the fifth *Johnson* factor, 1997-NMSC-036, ¶ 27, Defendant claims that the probative value of this evidence outweighs its prejudicial effect because the jury would not hold C.N.'s sexual orientation against him given that the jury was informed of Defendant's own admitted homosexuality, and given that he did not seek to introduce evidence that C.N. had multiple partners. We disagree because admission of evidence tending to establish C.N.'s sexual orientation could impermissibly turn the trial into an inquiry as to the sexuality of C.N. instead of the conduct of Defendant on the night in question and whether the State proved its theory that C.N. was unconscious and thus incapable of consent.

15

**{27}** In conclusion, we reject Defendant's argument that the district court abused its discretion in excluding admission of the evidence under the rape shield law.

**Sufficiency of the Evidence**

**{28}** Defendant claims that there was insufficient evidence to support his conviction for second degree CSPM. In analyzing a sufficiency challenge on appeal, "[w]e view the evidence in the light most favorable" to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Apodaca*, 1994-NMSC-121, ¶ 3, 118 N.M. 762, 887 P.2d 756. We will not "weigh the evidence [or] substitute our judgment for that of the fact finder." *State v. Gutierrez*, 2007-NMSC-033, ¶ 26, 142 N.M. 1, 162 P.3d 156 (alteration, internal quotation marks, and citation omitted). Moreover, this Court cannot "consider the merit of evidence that may have supported a [different result]." *State v. Kersey*, 1995-NMSC-054, ¶ 11, 120 N.M. 517, 903 P.2d 828 (internal quotation marks and citation omitted).

**{29}** In order to convict Defendant of second degree CSPM, the State had to prove, beyond a reasonable doubt, that:

    1.    [D]efendant caused [C.N.] to engage in anal intercourse;

    2.    [D]efendant used physical force or physical violence;

    OR

        [C.N.] was unconscious, physically helpless or suffering from a mental condition so as to be incapable of understanding the nature

16

or consequences of what [D]efendant was doing; AND [D]efendant knew or had reason to know of the condition of [C.N.];

    3.    C.N. was at least thirteen (13) but less than eighteen (18) years of age; [and]

    4.    [D]efendant's act was unlawful[.]

*See* NMSA 1978, § 30-9-10(A)(4) (2005) (defining force or coercion to include the commission of CSPM "when the perpetrator knows or has reason to know that the victim is unconscious, . . . or otherwise physically helpless or suffers from a mental condition that renders the victim incapable of understanding the nature or consequences of the act"); *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

{30}    Defendant's sufficiency challenge rests on his contentions that C.N.'s version of events was unbelievable and that there were inconsistencies in the testimony introduced at trial. We are unpersuaded by this argument because "credibility of witnesses is for the jury," *Sosa*, 2000-NMSC-036, ¶ 8, and any inconsistencies are for the jury to assess in determining C.N.'s credibility. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 (holding that it is the "exclusive province of the jury to resolve factual inconsistencies in testimony" (internal quotation marks and citation omitted)); *see also State v. Skinner*, 2011-NMCA-070, ¶ 31, 150

N.M. 26, 256 P.3d 969 (rejecting the defendant's challenge to the sufficiency of the evidence based on his assertions that the child's credibility was dubious because we will not second-guess the fact finder on matters of witness credibility), *overruled in part on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Moreover, the jury is free to disbelieve Defendant's version of the facts. *See Rojo*, 1999-NMSC-001, ¶ 19.

{31} Defendant also contends that the verdict must be set aside due to the lack of testimony corroborating C.N.'s testimony that he cut himself. However, "[t]he testimony of a victim need not be corroborated," NMSA 1978, § 30-9-15 (1975), and "the lack of corroboration has no bearing on the weight to be given the testimony." *State v. Hunter*, 1984-NMSC-017, ¶ 8, 101 N.M. 5, 677 P.2d 618 (affirming the defendant's conviction for three counts of criminal sexual penetration based on a record that contained evidence both supporting and contradicting the victims' testimony because it was up to the jury to weigh the evidence and decide whether to believe the victims' testimony).

{32} Based upon the evidence and testimony introduced at trial, we conclude that there was substantial evidence supporting Defendant's conviction.

**Defendant Was Not Entitled to a Mistrial**

{33} Defendant claims he was entitled to a new trial because he was denied his constitutional right to a fair and impartial jury. He contends that the jury was given erroneous information about their break schedule that could have affected their deliberation process. Defendant acknowledges that the facts about the allegedly erroneous information are not of record. Consequently, we decline to consider this issue. *See Hunter*, 2001-NMCA-078, ¶ 18 ("Matters not of record present no issue for review.").

**CONCLUSION**

{34} Based on the foregoing, we affirm Defendant's conviction for second degree criminal sexual penetration of a minor between the ages of thirteen and eighteen.

{35} **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**