**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMSC-032**

**Filing Date: August 21, 2014**

**Docket No. 33,592**

**STATE OF NEW MEXICO,**

       **Plaintiff-Respondent,**

**v.**

**VINCENT MONTOYA,**

       **Defendant-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**M. Monica Zamora, District Judge**

Jorge A. Alvarado, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Jacqueline R. Medina, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**BOSSON, Justice.**

**{1}** Once again, we are tasked with unraveling the confusing interplay between an accused's Sixth Amendment right "to be confronted with the witnesses against him," and our rape shield law designed to protect a victim's privacy. U.S. Const. amend. VI, NMSA 1978, Section 30-9-16 (1993). Here, the alleged victim, the accused's girlfriend, was the sole material witness against him for the crime of kidnapping with the intent to commit a sexual offense. On cross-examination, the accused wanted to ask her particular questions about their sexual relationship to demonstrate a certain pattern of conduct and understanding between

1

the two and thereby refute the accusation that he intended to have sex with her without her consent. The State objected to the line of questioning and the district court agreed, relying on New Mexico's rape shield law.

**{2}**     Because we determine that the accused was denied an opportunity to fully confront his accuser and because this error could have affected the jury's verdict, we reverse and remand for a new trial. In so doing, we again examine the competing policies between our rape shield law and the immutable right of the accused to confront his or her accuser.

## BACKGROUND

**{3}**     On February 12, 2012, a jury convicted Defendant Vincent Montoya of kidnapping with the intent to inflict a sexual offense upon his girlfriend (Victim). Defendant was also convicted of two other crimes not relevant to this appeal. The factual underpinnings leading to the incident are not in dispute.

**{4}**     On Super Bowl Sunday in 2007, Victim and Defendant were at Defendant's grandmother's home, where Defendant lived. At the time of the incident, Defendant was seventeen and Victim was fifteen. The two had been in a relationship for two years. Defendant and Victim began arguing after Defendant received a phone call from another girl.

**{5}**     During the argument, Defendant indicated to Victim that he wanted to have sexual intercourse with her, and at some point, the two ended up in Defendant's bedroom on his bed. On the bed, Defendant got on top of Victim and tried to remove her pants, breaking the zipper while doing so. Victim did not want to engage in intercourse with Defendant and told him "no" more than once on this occasion. Victim pushed and kicked Defendant until he stopped, ending his sexual advances. Victim testified that Defendant would have been able to force himself upon her if he had wanted to.

**{6}**     The two continued to argue. Victim kicked Defendant again, and after Defendant got off of Victim, he bit her on her upper thigh. Victim left the bedroom, despite Defendant's wish that she stay. In the living room, Defendant pushed Victim over a table, causing her to fall, hit her head, and hurt her back. Victim testified that she sustained a bruise on her leg from the bite, as well as a hurt back, a bump on her head and scratches from being pushed over the table. The event ended when Victim's parents arrived to pick her up, realized something was wrong, and called the police.

**{7}**     Of importance to this appeal, a grand jury indicted Defendant on the charge of kidnapping *with the intent* to inflict a sexual offense, contrary to NMSA 1978, Section 30-4-1(A)(4) (2003) ("Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, *with intent* . . . to inflict . . . a sexual offense on the victim." (emphasis added)). Defendant was also indicted for attempted criminal sexual penetration, contrary to NMSA 1978, Sections 30-28-1 (1963) ("Attempt to commit a felony consists of an overt act in furtherance of and *with intent* to commit a felony and

tending but failing to effect its commission." (emphasis added)) and 30-9-11(A), (E) (2003, amended 2009)[1] ("Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse . . . . Criminal sexual penetration in the third degree consists of all criminal sexual penetration perpetrated through the use of force or coercion.").

**{8}**     The pivotal issue in the case centered on Defendant's intent, specifically whether Defendant, in restraining Victim, *intended* to commit a sexual offense against her (criminal sexual penetration) or whether he merely intended to have consensual intercourse with his girlfriend. Defendant acknowledged his desire for consensual sex but denied any intent to have intercourse with Victim against her will. Thus, when the two went into the bedroom and Defendant straddled Victim on the bed, Defendant insisted that he did not have the requisite specific intent to commit a sexual offense against her.

**{9}**     Before trial, Defendant filed a motion under Rule 11-412 NMRA[2], New Mexico's rape shield rule, to elicit evidence directly from Victim by way of cross-examination regarding their prior sexual conduct, specifically, their previous acts of engaging in intercourse after an argument as a method to resolve disputes, something he called "make-up sex." In his motion and at the following hearing, Defendant explained his reasoning. He wanted to ask Victim whether the two of them had a long-standing sexual relationship and whether she and Defendant had engaged in sexual relations "after an argument in order to make up." As an offer of proof, Defendant represented that Victim would testify that "she believed Defendant was trying to have 'make-up sex' with her and that they had engaged in make-up sex in the past."

**{10}**     The district court held a pre-trial hearing, which functioned as an in camera hearing pursuant to Rule 11-412(C)(2). At the end of the hearing, the court denied Defendant's motion, finding that "[t]he alleged victim's past sexual conduct is inflammatory and prejudicial in nature and is not outweighed by its probative value." Significantly, the court

---

[1]The State erroneously cited NMSA 1978, Section 30-9-1(E) (1963) ("Enticement of a child") as the statute under which it was charging Defendant with criminal sexual penetration. Section 30-9-1 does not have a subsection E. When the indictment was filed, the correct statutory section for third-degree criminal sexual penetration was Section 30-9-*11*(E).

[2]Rule 11-413 NMRA was renumbered in 2012 without "chang[ing] the rule in any substantive way," and is now Rule 11-412. *See* Committee Commentary Rule 11-412 ("The rule, previously numbered Rule 11-413 . . . , was renumbered in 2012 as Rule 11-412 . . . , and Rule 11-412 . . . was renumbered as Rule 11-413. . . . The renumbering was adopted because the subject matter of renumbered Rule 11-412 is now consistent with Federal Rule 412, although the rule is substantively different."). For purposes of this opinion, all references to this rule will indicate Rule 11-412, despite all record citations and pleadings in this case referring to Rule 11-413.

recognized in its order that "Defendant's confrontation rights are implicated by the material the defense seeks to introduce but that material may be elicited by other legally proper means than through the alleged victim."

**{11}** At trial, Victim provided the critical testimony in support of the State's case. Victim had a difficult time recalling the details of the incident between her and Defendant. During cross-examination, Victim testified that she and Defendant had been in a relationship for two years, though pursuant to the district court's order, she did not expressly say it was a sexual relationship. On further cross-examination, Victim affirmatively answered defense counsel's questions, acknowledging that (1) if Defendant had wanted to he could have overpowered her by his size and strength to force her to have sexual intercourse with him, (2) she felt that Defendant was trying to get her to consent to let him have sexual intercourse with her and that she was not "terrified he was going to penetrate" her, and (3) she did not feel that Defendant would have sexual intercourse with her unless she consented.

**{12}** Defendant elected not to testify at trial and provided no witnesses to testify on his behalf. Ultimately, the jury acquitted Defendant of attempted criminal sexual penetration, but convicted him of kidnapping with the intent to inflict a sexual offense and two other crimes not relevant to this appeal. Charged as a youthful offender, Defendant was sentenced as an adult to a term of nearly eleven years in prison, seven of which were suspended on the condition that Defendant complete five years of supervised probation. *See* NMSA 1978, § 32A-2-20(B)(1) (2009) (giving the court the authority to impose an adult sentence on a youthful offender if the court finds the child is not amenable to treatment). On appeal, the Court of Appeals affirmed Defendant's conviction. *State v. Montoya*, 2013-NMCA-076, ¶¶ 1, 39, 306 P.3d 470.

**STANDARD OF REVIEW**

**{13}** We must clarify the proper standard of review for analyzing cases implicating both the rape shield rule and the Confrontation Clause. In reviewing this case below, the Court of Appeals noted that "[o]ur Supreme Court has sent confusing signals regarding the standard of review for cases involving both the rape shield rule and the Confrontation Clause," sometimes appearing to vacillate between de novo review of the constitutional issues and the more deferential abuse of discretion under the rape shield rule. *Montoya*, 2013-NMCA-076, ¶ 9. That may be, but we attempt to clarify.

**{14}** As we will highlight in this opinion, when a defendant makes a claim that the rape shield law bars evidence implicating his or her confrontation rights, a district court must first identify a theory of relevance implicating a defendant's constitutional right to confrontation and then weigh whether evidence elicited under that theory would be more prejudicial than probative. *See United States v. Powell*, 226 F.3d 1181, 1198 (10th Cir. 2000) ("Evidence adduced by cross-examination concerning prior sexual intercourse may be required to be admitted by Confrontation Clause rights where relevant and probative on a central issue of sexual offense charges.").

**{15}** It is well settled that our appellate courts generally review evidentiary matters for an abuse of discretion. *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d 231 ("The standard of review of evidentiary issues is well established. On review we defer to the trial judge's decision to admit or exclude evidence and we will not reverse absent a clear abuse of discretion.") (internal quotation marks and citation omitted), *reversed on other grounds by Woodward v. Williams*, 263 F.3d 1135, 1143 (2001). This standard of review, however, is different when a defendant's evidentiary challenge is based on constitutional rights to confrontation. The Tenth Circuit articulated an appropriate approach in a case dealing with the admission of prior sexual conduct evidence when it declared that it "review[s] challenges to rulings excluding evidence proffered by the defense *de novo* where the objections are based on Sixth Amendment confrontation rights." *Powell*, 226 F.3d at 1198.

**{16}** This is consistent with our own view because whether a constitutional right was violated is a question of law that does not require deference to a trial court's findings of fact. *See State v. Attaway*, 1994-NMSC-011, ¶ 10, 117 N.M. 141, 870 P.2d 103 ("[A]n appellate court is reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip . . . [a]n appellate court of its primary function as an expositor of law." (second alteration and omission in original) (internal quotation marks and citation omitted)). Therefore, "[q]uestions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Lopez*, 2013-NMSC-047, ¶ 7, 314 P.3d 236 (internal quotation marks and citation omitted).

## DISCUSSION

**{17}** New Mexico enacted its rape shield law in 1975. *See* 1975 N.M. Laws, ch. 109, §7; *State v. Johnson*, 1997-NMSC-036, ¶ 18, 123 N.M. 640, 944 P.2d 869. Our rape shield statute provides:

> As a matter of substantive right, in prosecutions pursuant to the provisions of Sections 30-9-11 through 30-9-15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Section 30-9-16(A).

**{18}** This Court adopted a similar rule of evidence, Rule 11-412, entitled "Sex Crimes; testimony; limitations; in camera hearing." Rule 11-412(A) provides that "[t]he following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior, or (2) evidence offered to prove a victim's sexual predisposition." There are, however,

exceptions. Rule 11-412(B) provides that "[t]he court may admit evidence of the victim's past sexual conduct that is material and *relevant* to the case when the inflammatory or prejudicial nature does not outweigh its probative value." (Emphasis added.) This rule gives district courts wide latitude to determine whether sexual-conduct evidence is relevant and not unduly prejudicial. *See* Haviva A. Graeber, *Evidence Law—Striking the Right Balance in New Mexico's Rape Shield Law—State v. Johnson*, 28 N.M. L. Rev. 611, 615 (1998) (recognizing that New Mexico's rape shield laws are among the "least restrictive" of the various rape shield laws in other states).

**{19}** As we have seen before in our jurisprudence, conflicts can and often do arise when the State's interest in protecting witnesses from unwarranted intrusions into their prior sexual history conflicts with an accused's right to confront his or her accuser and present a full and fair defense. *See, e.g.*, *State v. Stephen F.*, 2008-NMSC-037, ¶¶ 1, 6, 144 N.M. 360, 188 P.3d 84 (holding that a defendant had the constitutional right to cross-examine the victim regarding a prior sexual incident to establish the victim's motive to fabricate the present charges against him). As we have acknowledged before, "[i]f application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield." *Johnson*, 1997-NMSC-036, ¶ 24. "[E]vidence of prior sexual conduct must be admitted if a defendant shows that evidence implicates his or her constitutional right of confrontation." *Id.* ¶ 22.

**{20}** In this case we must determine whether the district court denied Defendant an opportunity to present a full and fair defense when it restricted the testimony he could elicit from Victim regarding their long-standing sexual relationship and history of engaging in sexual intercourse as a method of resolving disputes—"make-up sex." To do this, we examine Defendant's Confrontation Clause claim, because "a defendant's constitutional right of confrontation [serves] as a basis for determining relevance and weighing probative value, and [because] the admissibility of evidence of prior sexual conduct [may] show bias, motive to fabricate or for other purposes consistent with the constitutional right." *Id.* ¶ 9.

**Confrontation Clause**

**{21}** "The Confrontation Clause of the Sixth Amendment guarantees all criminal defendants, state and federal, the right 'to be confronted with the witnesses against' them." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 6, 136 N.M. 309, 98 P.3d 699 (quoting U.S. Const. amend. VI). The Fourteenth Amendment applies the Sixth Amendment to the states. *State v. Lopez*, 2000-NMSC-003, ¶ 14, 128 N.M. 410, 993 P.2d 727. "The most important element of the right of confrontation is the right of cross-examination." *State v. Sanders*, 1994-NMSC-043, ¶ 22, 117 N.M. 452, 872 P.2d 870. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Moreover, "[t]he rights to confront and cross-examine witnesses . . . have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

6

**{22}** We recognize that the right to cross-examine "is not absolute." *Sanders*, 1994-NMSC-043, ¶ 23. "However, a court's decision to restrict a defendant's ability to confront a witness, even when based on legitimate state interests, calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined." *Stephen F.*, 2008-NMSC-037, ¶ 6 (internal quotation marks and citation omitted). Finally, "[a] defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and *otherwise challenge an opposing version of facts*—is a critical limitation on the trial court's discretion to exclude evidence a defendant wishes to admit." *Johnson*, 1997-NMSC-036, ¶ 23 (emphasis added).

**{23}** In *Johnson*, this Court conducted an extensive exploration of the history and purpose of rape shield laws in New Mexico and across the country. *See Johnson*, 1997-NMSC-036, ¶¶ 11-21. In that case, the district court refused to admit evidence regarding the victims' prior sexual conduct as prostitutes. *Id.* ¶ 1. We examined whether this restriction violated the defendant's confrontation right to present his theory of the case; namely, the victims had a motive to fabricate the rape allegations which their prior experience as prostitutes somehow demonstrated. *See id.* ¶¶ 1, 8, 22.

**{24}** We held in *Johnson* that the defendant failed to make a sufficiently specific case as to any alleged nexus between the victims' prior status as prostitutes and a purported motive to fabricate, and therefore we concluded that the proffered evidence of prostitution was not relevant. *See id.* ¶¶ 29, 32-33, 40. In doing so, we recognized the vital role the district court plays in "preserving the delicate balance" between protecting a defendant's constitutional right to confrontation and the legislature's goals in enacting the rape shield law. *See id.* ¶ 25 (internal quotation marks omitted). We stated that "the court must consider probative value not only in order to identify a theory of relevance, but also in order to evaluate the consequences of either admitting the evidence or excluding it." *Id.*

**{25}** *Johnson* was ultimately about the district court's role in assessing the relevance of an accused's proffered evidence. Significantly, in *Johnson* we recognized that "[n]othing in our statute or rule . . . limits the reasons a court might find evidence material and of sufficient probative value to justify admission." *Id.* ¶ 19. "[O]ur statute, rule, and cases rely on the trial court judge to identify theories of relevance as well as to exercise discretion, balance prejudicial effect against probative value, and thus determine admissibility on a case by case basis." *Id.* ¶ 20.

**{26}** In *Johnson,* we further suggested a nonexclusive set of guidelines to assist the district court in determining the relevancy and admissibility of prior-sexual-conduct evidence implicating a defendant's constitutional rights. *See id.* ¶¶ 27-28.[3] We stated that "a showing

---

[3]The five-factor test asks the following:

(1) whether there is a clear showing that the complainant committed the prior

7

sufficient under the five-pronged . . . test establishes a constitutional right to present evidence otherwise excluded by our statute." *Id. ¶* 28.

**{27}** We emphasize again that these factors are nothing more than a "possible framework" for assessing relevance. *See id.* ¶ 28 (stating that the factors were "not intend[ed] to limit the trial courts in the exercise of discretion under the rule and statute, but rather to suggest a possible framework for exercising that discretion"); *Stephen F.*, 2008-NMSC-037, ¶ 8 (noting that the five-factor test was intended only to provide guidelines, not rigid requirements). Although some subsequent judicial reference to those guidelines might suggest that they should always be applied in cases assessing relevance of past sexual conduct, *see id.* ¶¶ 10-25, we have never intended to encourage a rigid, mechanical use of these factors.

**{28}** Unlike the Confrontation Clause, rape shield laws are not constitutional in nature. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the . . . Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal quotation marks and citations omitted)). Rather, rape shield protections arise in the context of evidentiary rules regarding relevance. Indeed, New Mexico's rape shield rule is in Article 4 of New Mexico's evidentiary rules, which deal with "Relevancy and Its Limits." Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action.").

**{29}** When dealing with the competing interests presented by the rape shield law and the Confrontation Clause, relevance—defendant's particular theory of relevance—is of paramount importance. Therefore, the district court's task is to determine whether a defendant has presented sufficient facts to support a theory of relevance implicating his constitutional right to confrontation. *Stephen F.*, 2008-NMSC-037, ¶ 7 ("Under our statute and rule of evidence, 'a defendant must show sufficient facts to support a particular theory of relevance' to enable the trial court to competently assess the constitutional significance of that theory." (quoting *Johnson*, 1997-NMSC-036, ¶ 32)). If a defendant makes such a showing, the court must then weigh the probative value of that evidence against the danger of unfair prejudice to the victim. *See* Rule 11-412(B).

---

acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; [and] (5) whether the probative value of the evidence outweighs its prejudicial effect.

*Id.* ¶ 27.

**Defendant Presented a Theory of Relevance Implicating His Constitutional Right to Confrontation**

{30}     Defendant argued that Victim's testimony regarding their long-standing sexual relationship and history of engaging in "make-up sex" was singularly relevant to his defense: that he never intended to assault her sexually (without her consent) but was only pursuing consensual "make-up sex" as they had done after arguments in the past. The record indicates explicitly that no one, including Victim, disputed their sexual relationship. The jury, however, was not made aware of their prior sexual relationship, at least not explicitly. Defendant contends that because of the district court's evidentiary restrictions jurors could have believed "this was the first and only sexual encounter between [Defendant and Victim]."

{31}     In his pretrial motion to admit the sexual conduct evidence, Defendant argued:

> The alleged victim's sexual conduct is relevant because such evidence implicates Defendant's constitutional right to present a defense to the specific intent crimes of kidnapping and attempted criminal sexual penetration. It would be to enable Defendant to present evidence that his intent was to have consensual sexual relations with his long-time girlfriend, not to have sex with her against her will.

In his motion, Defendant further argued, "There is no other evidence available to Defendant that so meaningfully goes to the issue of specific intent. Intent is a difficult thing to prove, but conversely, a difficult thing to deny without looking at the big picture."

{32}     Ironically, the district court agreed with Defendant that his proffered evidence was relevant and implicated his confrontation rights. The judge stated, "I agree with Defendant that he is entitled to a right to confrontation and to present his case, and particularly . . . the jury needs to know about this sexual relationship." Nevertheless, the district court excluded the evidence by reasoning that "there[ are] other means this can be brought in through, it doesn't have to be . . . through this witness."

{33}     The district court did not elaborate on the other avenues available for Defendant to elicit this evidence, and we are skeptical that any other lawful means existed. For example, the State insisted that Defendant could take the stand and testify as to his lack of criminal intent, a suggestion the district court neither endorsed nor rejected. At trial, however, Defendant chose to remain silent and *not* to testify, consistent with his constitutional right against compelled self-incrimination. *See* U.S. Const. amend. V ("No person shall . . . be compelled in any criminal case to be a witness against himself."); N.M. Const. art. II, § 15 ("No person shall be compelled to testify against himself in a criminal proceeding."). Defendant cannot be compelled to choose one constitutional right over another. *See State v. Brown*, 2006-NMSC-023, ¶ 9, 139 N.M. 466, 134 P.3d 753 ("[I]t is well settled that forcing a criminal defendant to surrender one constitutional right in order to assert another is

intolerable." (internal quotation marks and citation omitted)).

**{34}**     Also relevant to our consideration, no other witnesses appeared to testify in support of Defendant's lack of criminal intent, making Defendant's requested cross-examination not cumulative but seemingly vital to his defense. Apparently, there was no one else, aside from Defendant and Victim, who could testify about the intimate details of their relationship—a conclusion supported by common sense if nothing else.

**{35}**     For all these reasons, we agree with the district court that Defendant's line of inquiry on cross-examination was relevant to a full and fair presentation of his legal defense—a lack of specific intent to sexually assault Victim. We are not persuaded, at least not on this record, that other lawful avenues were available for Defendant to present this defense without the requested cross-examination. What follows under our rule is a judicial balancing of the probative value of the evidence against the risk of unfair prejudice, a subject to which we will turn momentarily. But first, we address an additional analysis, one expressed by the Court of Appeals but not the district court, as to why Defendant's line of inquiry was not relevant.

**{36}**     In concluding that Defendant's constitutional confrontation rights were not implicated, our Court of Appeals focused on Defendant's concession that he was not trying to impeach Victim by challenging her bias, lack of credibility, or truthfulness. *See Montoya*, 2013-NMCA-076, ¶¶ 23-26. Defendant conceded that he was not attacking Victim; he was not trying to make Victim out "to be a liar, or biased, or in any way a bad person or a bad witness." Instead, Defendant wanted Victim's testimony so that he could "challenge the State's version of the facts," not the Victim's, that he restrained her with the intent to sexually assault her. The Court of Appeals found this distinction meaningful.

**{37}**     Defendant uses this language to describe his purpose—to "challenge the State's version of the facts"—precisely because in *Johnson* we stated that "[a] defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and *otherwise challenge an opposing version of facts*—is a critical limitation on the trial court's discretion to exclude evidence a defendant wishes to admit." *Johnson*, 1997-NMSC-036, ¶ 23 (emphasis added). In other words, we indicated in *Johnson* that a defendant's right of confrontation is *not* limited to bias or other challenges to the witness's credibility.

**{38}**     The Court of Appeals found this argument unpersuasive, concluding that "[u]nder Defendant's interpretation [of *Johnson*], this language would turn any limitation on cross-examination—regardless of its relation to bias, credibility, and motive to lie—into a violation of the Confrontation Clause." *Montoya*, 2013-NMCA-076, ¶ 24. We disagree.

**{39}**     Although confrontation of a witness often includes an underlying challenge to the credibility or reliability of testimony, we have never limited the constitutional right to confrontation to the subject of credibility. *See Johnson*, 1997-NMSC-036, ¶ 9 (noting "other purposes" for which confrontation would be necessary). "For two centuries, common law

10

judges and lawyers have regarded the opportunity of cross-examination as an essential safeguard of the *accuracy* and *completeness* of testimony." Kenneth S. Broun, *1 McCormick on Evidence*, § 19 (7th ed. 2013) (emphasis added). *See also United States v. Caudle*, 606 F.2d 451, 457 (4th Cir. 1979) ("It may not be an exaggeration to claim . . . that cross-examination is beyond any doubt the greatest legal engine ever invented for the discovery of truth. And, its efficacy in testing the accuracy and completeness of testimony is so well understood that the right of cross-examination is one of the safeguards essential to a fair trial." (internal quotation marks and citations omitted)). Cross-examination serves to test the completeness as well as the accuracy of testimony, something Defendant wanted to do by asking Victim about historical facts that could lead to a more complete explanation of why he acted the way he did, or at least a different explanation from that suggested by the State.

**{40}**    Under the particular facts of this case, the State appears to use the rape shield law not so much to protect the Victim, but to protect its theory of the case from meaningful challenge. Because the district court excluded Defendant's proffered evidence, Victim's testimony provided the jury with an incomplete version of their relationship, something that bolstered the State's case. The rape shield law should not serve to protect the prosecution and its characterization of a case, especially when, as we will discuss, concerns regarding Victim's embarrassment and harassment are minimal.

**{41}**    We emphasize that we are not focused on mere propensity evidence. For example, Defendant's theory of relevance would be unpersuasive if he were to argue that because Victim had consented in the past, she likely consented on this occasion, or even that Defendant would somehow be entitled to presume her consent based on past conduct. Defendant does not argue that because of "make-up sex" in that past, Victim must have intended consensual "make-up sex" on this occasion. Defendant's theory goes not to Victim's propensity or her state of mind; it goes solely to his own thinking (specific intent) in light of an alleged pattern of conduct and understanding between the two parties in the context of allegedly similar circumstances. Defendant was free to point out that once he realized that the facts and circumstances were *not* similar to a pattern of "make-up sex," his sexual advances ceased. We also note that Victim was the State's key witness and the only witness who could provide the testimony necessary for Defendant's theory of the case, making this specific testimony all the more important. *See United States v. Mizell*, 88 F.3d 288, 293 (5th Cir. 1996) ("This right [of cross-examination] is particularly important when the witness is critical to the prosecution's case.").

**The Inflammatory or Prejudicial Nature of Defendant's Proffered Evidence Does Not Outweigh Its Probative Value**

**{42}**    Concluding that Defendant presented an adequate theory of relevance to support admission of his proffered evidence, as did the district court, we must now examine whether the district court failed to accord the proper weight to Defendant's confrontation rights when it excluded the evidence. *See Stephen F.*, 2008-NMSC-037, ¶ 28 ("In this case, the State's

11

interest in applying the rape shield statute to protect [Victim's] privacy, while important, is outweighed by [Defendant's] right of confrontation under the Sixth Amendment."). In conducting this balancing test, we reflect on the purpose behind rape shield laws. Traditionally, "[e]vidence of previous sexual conduct was deemed relevant at common law on the issue of whether the rape complainant had consented to sexual relations on the occasion in question—a complete defense, if established, to a charge of forcible rape." Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 766 (1986) (footnotes omitted). Additionally, at common law, some courts admitted "evidence of unchastity . . . to impeach a complainant's credibility on the theory that 'promiscuity imports dishonesty.'" *Id.* However, this "use of the complainant's prior sexual conduct, pursuant to various theories of relevance, appeared to have deterred victims of sexual assault from making formal complaints." *Johnson*, 1997-NMSC-036, ¶ 11. To encourage victims to report incidents of sexual assault, states enacted rape shield laws to protect victims from unnecessary intrusions into their past sexual history, because states recognized that such evidence is usually only marginally relevant. *See id.* ¶ 12.

**{43}**     These underlying concerns targeted by rape shield laws—concerns which this Court fully recognizes—do not appear to be prominent in this case. As we have previously noted, Defendant was not seeking the admission of his proffered evidence to prove that because Victim had consented to intercourse with him in the past, she must have consented again. Defendant acknowledges that on this particular occasion Victim did *not* consent and expressed her displeasure in forceful terms. Additionally, Defendant did not seek to delve unduly into the details of their sexual encounters, embarrass or harass Victim, elicit testimony regarding Victim's sexual conduct with others, or discredit her character. Defendant sought Victim's testimony solely to establish a pattern of conduct between the two of them in order to present a complete defense and exculpatory evidence. As always, the district court was free to manage the ebb and flow of any testimony to prevent abuse.

**{44}**     This case resembles another recent opinion in which this Court dealt with the interplay between the Confrontation Clause and the rape shield law. In *Stephen F.*, we addressed whether the exclusion of evidence regarding the victim's previous sexual relations with *another* person impinged on the defendant's constitutional right to confront the witnesses against him and his right to develop his theory of the case. *Stephen F.*, 2008-NMSC-037, ¶¶ 1, 3. The defendant's sole theory was that the victim had consented to their intercourse, only later to fabricate a rape allegation, because she feared punishment from her parents who had punished her previously when she had sexual relations with another person. *Id.* ¶¶ 3, 24. In order to establish the victim's motive to fabricate the present allegations of rape, the defendant wanted to cross-examine the victim about this prior incident of sexual intercourse and subsequent punishment, as well as elicit testimony from the victim's parents regarding the consequences of her prior sexual conduct. *Id.* We held that the refusal to allow the defendant to question the victim about facts which arguably could present a motive to lie "infringed on his right to effective cross-examination." *Id.* ¶ 22.

**{45}** Like *Stephen F.*, where we recognized that the only means for the defendant to present a complete defense was to question the victim about her prior sexual conduct, the only available means for Defendant to present his theory of defense was to ask Victim specific questions about their longstanding sexual relationship and history of engaging in "make-up sex." Moreover, in *Stephen F.* the victim was likely afraid of recounting her prior sexual conduct on the stand, due to her fear of punishment from her parents. Here, on the other hand, Victim appeared willing and unfazed about testifying about her sexual conduct with Defendant. In fact, defense counsel alerted the district court that when asked if she and Defendant had engaged in "make-up sex," Victim "laughed and said, 'all the time.'"

**{46}** Finally, the State argues, and the Court of Appeals agreed, that Defendant's proffered evidence would be more prejudicial than probative because it was merely cumulative of the other testimony Defendant elicited from Victim. *Montoya*, 2013-NMCA-076, ¶¶ 31-32. We recognize that Victim did testify that she and Defendant had an ongoing relationship, that she felt that Defendant had the strength and ability to force her to have sexual intercourse with him, that she was not terrified that Defendant was going to "penetrate" her, and that she believed Defendant did not have sexual intercourse with her because she did not want to. Although Victim testified that the couple had a relationship, her testimony did not include the specific fact that they had a sexual relationship and one that included "make-up sex," the very testimony Defendant needed to develop a complete and accurate theory of his case.

**{47}** We emphasize that we do not intend this opinion to restrict unduly the ability of a district judge to manage acceptable boundaries of cross-examination. It bears repetition that

> trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . [T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks and citation omitted). Here, the district court could have crafted carefully worded questions to elicit testimony directly from Victim regarding the fact that she and Defendant had a past sexual relationship and often engaged in "make-up sex," without allowing defense counsel to cross-examine Victim in "whatever way, and to whatever extent," it wished. *See id.*

**{48}** Overall, Defendant's proffered evidence would have had little prejudicial impact on Victim. Therefore, the district court "failed to accord the proper weight to [Defendant's] constitutional right" when balancing the probative value against the prejudicial effect of the evidence. *See Stephen F.*, 2008-NMSC-037, ¶ 37. By excluding the evidence, the district court stripped Defendant of his right to present a full and fair defense and to effectively cross-examine Victim.

13

**The Exclusion of Defendant's Proffered Evidence Was Not Harmless**

**{49}** "Having concluded that [Defendant's] Sixth Amendment Right was violated, we must now [consider] whether reversal is warranted in this case. Confrontation Clause violations are subject to harmless[-]error review." *Stephen F.*, 2008-NMSC-037, ¶ 38. When conducting a harmless-error review, "[t]he State has the burden of establishing that [a] constitutional error was harmless beyond a reasonable doubt." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 (internal quotation marks and citation omitted). Because the error here was constitutional, the error "is harmless only if we conclude that there is no reasonable possibility the error contributed to the jury's decision to convict Defendant." *Id.* ¶ 45.

**{50}** In this case, there is a reasonable possibility that the court's erroneous exclusion of Victim's history of "make-up sex" with Defendant affected the verdict. As we have already explained, the evidence that Defendant wished to elicit went to the heart of his case; it was the only evidence available to him by which he could establish his intent without sacrificing his right not to testify. Absent this testimony, the jury only heard one side of the story. Therefore, we hold that the exclusion of this evidence was not harmless beyond a reasonable doubt.

**CONCLUSION**

**{51}** We reverse Defendant's conviction and remand for a new trial consistent with this opinion.

**{52}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**