This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37360

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JACOB "JAKE" DURAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Davis Law New Mexico
Nicholas T. Davis
Albuquerque, NM

Barbara Creel
New Mexico Innocence and Justice Project
UNM School of Law
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**      Defendant Jacob "Jake" Duran appeals from the district court's order denying his motion to set aside his judgment and sentence and dismiss with prejudice or, in the alternative, grant a new trial pursuant to Subsection H of the Procedures for Post-Conviction Consideration of DNA Evidence statute, NMSA 1978, Section 31-1A-2 (2005, amended 2019).[1] Defendant advances four arguments, three of which concern the proper standard for relief under Section 31-1A-2. We recently announced the applicable standard in *State v. Hobbs*, 2020-NMCA-____, ____ P.3d ____ (No. A-1-CA-37477, June 16, 2020). Accordingly, we do not reach Defendant's first three arguments and instead reverse the district court's denial of Defendant's motion and remand for reconsideration in light of the standard announced in *Hobbs*. Defendant's fourth argument is that the district court committed fundamental error and denied him due process by not allowing him to put on other non-DNA related evidence at the hearing on his Section 31-1A-2(H) motion. We address this final issue because it is likely to reoccur on remand. However, for the reasons set forth below, we conclude that the district court did not err or deprive Defendant of due process by denying his request to present additional non-DNA related evidence.

**BACKGROUND**

**I.      Defendant's Trial and Direct Appeal**

**{2}**      On February 13, 1987, Defendant was indicted for the murder and armed robbery of Teofilia Gradi (Victim). The matter proceeded to trial, where the following evidence relevant to this appeal was presented.[2]

**{3}**      John Radick testified to the following: On December 19, 1986, he was walking past Victim's home around 10:00 p.m. when he saw someone who appeared to have just jumped over the home's fence. The person was about 5 ft. 7 in. or 5 ft. 8 in. with a dark complexion, slight build, a beard, and was wearing a fleece-lined denim jacket, Levi trousers, and a ski cap. Mr. Radick, at a later date, was unable to definitively identify the person that he had seen near Victim's home when shown a photograph lineup at the police station but selected Defendant's photograph when asked to pick the photograph of the person most resembling the person he saw on the night in question. When officers showed him the fleece-lined denim jacket they had taken from Defendant, Mr. Radick told them that it was not the jacket he saw on the person outside Victim's home on the night in question. After watching Defendant walk around a table during trial, Mr. Radick stated, "There is a lot of resemblance there, yes."

**{4}**      The State also called three forensic experts at Defendant's trial who testified to the following: An expert in forensic serology testified that the blood found under the

---

1All citations to Section 31-1A-2 in this opinion are to the 2005 amendment, which was the version applicable at the time Defendant filed his petition for post-conviction DNA testing under that statute.

2We do not identify all of the evidence presented at Defendant's trial because this is a memorandum opinion and the parties are familiar with the facts of this case. Nevertheless, we provide an abbreviated discussion of the pertinent trial testimony as necessary to provide context to both our Supreme Court's analysis in Defendant's direct appeal and the post-conviction DNA testing at issue here.

Victim's fingernails gave indications of the same glyoxalase banding as that of Defendant's blood, but the expert was unable to report a definite result because the results were unreliable. An expert in hair and fiber analysis and examination testified that, based on microscopic hair comparisons, two hairs found on Victim's clothing were consistent with Defendant's hair sample and two hairs found on Defendant's clothing were consistent with Victim's hair sample. An expert in firearm/tool mark identification and crime scene investigation testified that a shoe print found outside Victim's home could be consistent with a size six shoe, which is the size of shoe another witness testified Defendant wore.

{5}      The jury ultimately found Defendant guilty of first degree murder, contrary to NMSA 1978, Section 30-2-1(A) (1980, amended 1994), and armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973). The jury also found that Defendant used a firearm in the commission of the armed robbery, contrary to NMSA 1978, Section 31-18-16(A) (1979, amended 1993). Defendant was sentenced to a term of life in prison plus ten years. Defendant appealed his conviction to our Supreme Court.

{6}      Defendant, in relevant part, challenged the sufficiency of the evidence to support his convictions in his direct appeal. *State v. Duran*, 1988-NMSC-082, ¶ 1, 107 N.M. 603, 762 P.2d 890, *superseded on other grounds by rule as stated in State v. Gutierrez*, 1998-NMCA-172, ¶ 10, 126 N.M. 366, 969 P.2d 970. Our Supreme Court indicated that the only issue was whether there was sufficient evidence identifying Defendant as the perpetrator of the crimes. *Duran*, 1988-NMSC-082, ¶ 3. On that point, our Supreme Court provided the following analysis:

> The prosecution presented several witnesses to connect [D]efendant with the crime, including one eyewitness and three expert forensic witnesses. That evidence as a whole would support the conclusion that [D]efendant could not be excluded from the class of persons who could have committed the crimes, and it placed [D]efendant in [V]ictim's neighborhood at the time of the homicide.

*Id.* Recognizing that Defendant had the opportunity to argue the evidence to the jury and that it was the jury's function to determine credibility, our Supreme Court concluded that Defendant's convictions were supported by substantial evidence. *Id.*

## II.      The Proceedings Pursuant to Section 31-1A-2

{7}      Nearly twenty-eight years after his conviction, Defendant filed a petition for post-conviction DNA testing pursuant to Section 31-1A-2(A). Defendant sought DNA testing of Victim's fingernail clippings and of the hairs that were the subject of expert testimony at trial. Defendant agreed to submit to DNA testing and authorized the district attorney's use of the DNA test results to investigate all aspects of the case as required by Section 31-1A-2(B). The district court ordered the State to respond to Defendant's petition, pursuant to Section 31-1A-2(E), and entered a stipulated order to preserve evidence, in

accordance with Section 31-1A-2(F), (L). The State filed its response and Defendant replied.

**{8}** Following an initial hearing, the district court ordered an inventory of the evidence collected as part of the investigation into the crimes for which Defendant was convicted. The inventory identified a DNA standard from Defendant; many slides of hair, most of which were cracked or shattered; Victim's fingernail clippings; and a blood spot DNA standard from Victim. Of the sixteen hair slides that were not broken, only seven were of evidentiary value.

**{9}** Within the slides containing hairs of evidentiary value, two hairs that were taken from Victim's clothing were identified as having root material. One hair was described at Defendant's trial as being insufficient for comparison purposes due to a lack of pigmentation. The other was described at trial as being consistent with Victim's hair sample. The presence of root material on these hairs made them suitable for Short Tandem Repeats (STR) DNA testing.

**{10}** Also within the slides containing hairs of evidentiary value were three other potentially inculpatory hairs. The first was a hair taken from Victim's clothing and had been described at trial as consistent with Defendant's hair sample. The second and third were hairs taken from Defendant's clothing and, at trial, had been described as consistent with Victim's hair sample. These three hairs did not have root material and were therefore not suitable for STR DNA testing.

**{11}** The district court ordered a total of three rounds of DNA testing. *See* § 31-1A-2(G) (requiring that the district court "order DNA testing if the petitioner satisfies the requirements set forth in Subsections B and C" of the statute). The district court first ordered DNA testing of Victim's fingernail clippings. A serology test indicated that there was blood present on the fingernail clippings and subsequent DNA testing revealed no male DNA. Accordingly, Defendant could not have contributed to the biological material on Victim's fingernails. The district court next ordered DNA testing of two hairs found on Victim's clothing that had root material. The DNA testing did not identify Defendant's DNA profile, eliminating Defendant as a contributor. The district court then ordered that the hair found on Victim's clothing that was not suitable for STR DNA testing be subjected to mitochondrial DNA testing. Defendant was also eliminated as a contributor to that hair.

**{12}** Following those three rounds of DNA testing, Defendant moved to set aside the judgment and sentence and dismiss with prejudice or, in the alternative, for a new trial. Defendant filed a memorandum in support, the State responded, and Defendant replied. After a hearing was held on Defendant's motion, the parties also submitted proposed findings of fact and conclusions of law. The district court subsequently denied Defendant's Section 31-1A-2(H) motion. Defendant appeals.

**DISCUSSION**

## I. We Reverse the District Court's Denial of Defendant's Motion and Remand for Reconsideration in Light of the Standard We Announced in *Hobbs*

**{13}** As a matter of first impression, this Court announced the proper standard for granting or denying relief under Section 31-1A-2(H) in *Hobbs*. We briefly summarize our analysis and holdings in *Hobbs*, as relevant to this opinion.

**{14}** In *Hobbs*, we recognized that all fifty states and the District of Columbia have adopted a statute or an act that allows for post-conviction DNA testing but none were identical to New Mexico's statute—Section 31-1A-2. *Hobbs*, 2020-NMCA-____, ¶ 25. Of those other jurisdictions, we were only able to identify six outside of New Mexico that used "exculpatory" when evaluating whether to grant post-testing relief. *Id.* ¶ 27. However, none of the appellate courts from those six jurisdictions had interpreted what "exculpatory" meant within their post-conviction DNA testing framework. *Id.* Accordingly, we proceeded to analyze the language chosen by our Legislature. *Id.* ¶ 28.

**{15}** Section 31-1A-2(H) provides that "[i]f the results of the DNA testing are exculpatory, the district court may set aside the petitioner's judgment and sentence, may dismiss the charges against the petitioner with prejudice, may grant the petitioner a new trial or may order other appropriate relief." We noted that while our Legislature did not define "exculpatory" as used in Section 31-1A-2(H), our case law had defined "exculpatory evidence" as "evidence reasonably tending to negate guilt." *Hobbs*, 2020-NMCA-____, ¶¶ 29-30 (internal quotation marks and citation omitted). We then rejected the state's suggestion that we rely on the language of Section 31-1A-2(A) to require that the DNA evidence prove the petitioner innocent and instead held "that post-conviction DNA testing is 'exculpatory' under Section 31-1A-2(H) when it reasonably tends to negate the petitioner's guilt." *Hobbs*, 2020-NMCA-____, ¶¶ 31-33. Explaining that standard, we then held that such exculpatory DNA evidence must (1) "be material"; (2) "not be merely cumulative"; (3) "not be merely impeaching or contradictory"; and (4) "raise a reasonable probability that the petitioner would not have pled guilty or been found guilty had the DNA testing been performed prior to the conviction." *Id.* ¶¶ 38-41.

**{16}** The district court in this case has yet to have the opportunity to apply the standard announced in *Hobbs* to the facts of this case. For that reason, we reverse the district court's denial of Defendant's motion and remand for reconsideration in light of the standard announced in *Hobbs*. On remand, "the district court shall enter findings of fact and conclusions of law addressing each of the four requirements." *Id.* ¶ 43. Only if the district court determines that the post-conviction DNA evidence in this case meets all four requirements can it properly grant Defendant relief under Section 31-1A-2(H). *Hobbs*, 2020-NMCA-____, ¶ 43.

## II. The District Court Did Not Err or Deny Defendant Due Process by Denying His Request to Present Other Non-DNA Related Evidence

**{17}** Before the hearing on Defendant's motion to set aside the judgment and sentence and dismiss with prejudice or, in the alternative, grant a new trial, Defendant

filed a motion to clarify the scope of the hearing. Specifically, Defendant indicated that he sought to have three unidentified experts testify at the hearing on his motion for relief under Section 31-1A-2(H): First, Defendant proffered that an expert in the field of modern forensic science and/or DNA testing "would testify to the inconsistencies and unreliability of microscopic hair comparisons[.]" Defendant contended that this expert would also testify that those problems with such evidence would call into question the reliability of the trial testimony that tied Defendant to a second hair taken from Victim's clothing. This hair could not be subjected to post-conviction DNA testing due to the condition of the hair slides. Second, Defendant proffered an expert in modern forensic evidence who would testify regarding proper shoeprint evidence gathering and analysis. Defendant contended that this expert would identify issues with the shoe size statistics presented at his trial as well as issues with the way the shoeprint in this case was gathered and analyzed. Third, Defendant proffered an expert in eyewitness identification and psychology who would testify regarding issues with photographic identification lineups and identification bias. Defendant contended that this expert would challenge the trial testimony of the eyewitness as well as the methodology of the photographic identification lineups used in this case.

**{18}** A hearing was held on Defendant's motion to clarify. At the hearing, Defendant argued that the foregoing experts would assist the district court in determining whether there is a reasonable probability that Defendant would not be convicted should a new trial be granted because it is the type of evidence that would be presented at the new trial. The State argued that the limited scope of Section 31-1A-2, which concerns only DNA evidence, did not support Defendant's request to launch a wholesale attack on the other scientific evidence and eyewitness testimony. Following the hearing, the district court issued an order denying Defendant's request to present expert testimony unrelated to the post-conviction DNA testing.

**{19}** Defendant argues that the district court's denial of his request to present that evidence resulted in fundamental error and violated his due process rights. Defendant specifically contends that a determination under Section 31-1A-2 required the district court to consider "how . . . the weight of other 'forensic' evidence would be altered—not because of any different arguments by counsel but because of the *science* of them, and therefore their fundamental truth, has changed." We disagree.

**{20}** "It is well settled that our appellate courts generally review evidentiary matters for an abuse of discretion." *State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935. Defendant's argument, however, requires us to interpret Section 31-1A-2, which "is a question that this Court reviews de novo." *State v. Martinez*, 2006-NMCA-068, ¶ 5, 139 N.M. 741, 137 P.3d 1195. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801.

**{21}** In support of his argument, Defendant cites authority from other states interpreting the proper procedure for consideration of newly discovered evidence, including such evidence in the context of post-conviction DNA testing. However, as we noted in *Hobbs*, our post-conviction DNA testing statute is unique. 2020-NMCA-____, ¶ 25. We therefore are not persuaded that the procedures that other states have adopted based on their unique legislative enactments compel a particular result here. Accordingly, we must look to the specific language chosen by our Legislature in Section 31-1A-2. Defendant however has not advanced any argument on this point under the language of Section 31-1A-2. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating appellate courts are under no obligation to review unclear or undeveloped arguments). Nevertheless, based on our independent review of Section 31-1A-2's language, we find no support for Defendant's argument.

**{22}** Interpreting the language of Section 31-1A-2(H), we made clear in *Hobbs* that exculpatory post-conviction DNA evidence, in relevant part, must raise a reasonable probability that the petitioner would not have pled guilty or been found guilty had the DNA testing been performed prior to the conviction. *Id.* ¶ 41. To make this determination the district court must consider the effect the post-conviction DNA testing would have had in the context of the evidence against the petitioner at the time that he pled or was found guilty—that is, "the district court is to determine the DNA evidence's probable effect on the *original* proceeding[.]" *Id.* It does not require the district court to reweigh the evidence, other than DNA evidence contemplated under Section 31-1A-2, using today's scientific standards. Accordingly, we conclude that the district court did not err or deprive Defendant of due process by denying Defendant's request to present other non-DNA related evidence at the Section 31-1A-2(H) hearing.

## CONCLUSION

**{23}** We reverse the district court's denial of Defendant's motion and remand for further consideration in light of the standard announced in *Hobbs*.

**{24}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JULIE J. VARGAS, Judge**