This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: November 13, 2023**

**No. S-1-SC-39389**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DARIAN RASHAUD BASHIR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Erica Schiff, Assistant Attorney General
Santa Fe, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

## DECISION

**BACON, Chief Justice.**

**{1}** A jury convicted Defendant Darian Rashaud Bashir of first-degree deliberate intent murder for the fatal shooting of Jackson Weller (Victim), contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), and tampering with evidence for hiding the license plate of the getaway car, contrary to NMSA 1978, Section 30-22-5 (2003). Defendant raises three issues on direct appeal to this Court: (1) the district court's alleged improper evidentiary rulings, (2) alleged bias on the part of the district court in having "misstated the facts of the case at sentencing," and (3) cumulative error that deprived him of a fair

trial. *See* N.M. Const. Art VI, sec. 2 (providing that appeals from a judgment of the district court imposing a life sentence shall be taken directly to the Supreme Court). Defendant advances these issues under *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶¶ 17-24, 103 N.M. 655, 712 P.2d 1. We affirm Defendant's convictions, disposing of the case by nonprecedential decision because the issues are well-settled under New Mexico law or manifestly without merit. *See* Rule 12-405(B)(1), (5) NMRA.

## I.      BACKGROUND

**{2}**      The facts are few and, for purposes of this appeal, undisputed. Victim, then a student and baseball player at the University of New Mexico, joined some of his friends and teammates for a night of socializing, eating, and drinking in the Nob Hill area of Albuquerque. Three members of the group, including Victim, ended the fateful night at an after-hours restaurant, outside of which Victim got involved in an argument and physical altercation with three "rowd[y]" men who were "taunting" him. Nicholas Garza (Nico), one of Victim's teammates, tried to defuse the situation before the scuffle began by asking the antagonists to stop "calling [Victim] out," but to no avail. Nico eventually helped break up the fight.

**{3}**      A short time later, Defendant—who was not involved in the initial altercation—arrived upon the scene, parking his car in a nearby alleyway. Defendant approached Victim and Nico and asked in a "calm" voice whether they were among "the guys fighting" earlier. Victim answered in the affirmative, explaining that he had gotten "jumped." In response, Defendant asked the pair to "walk with [him] real quick," again in a calm voice. Victim and Nico obliged, following Defendant for "about ten steps" before Defendant turned and fired a single shot from a gun which he had in his pants pocket, striking Victim in the chest and inflicting a wound that ultimately killed Victim.

**{4}**      At trial, Defendant's conduct—his role as the lone shooter—was not in issue, having been acknowledged by defense counsel during opening statement and confirmed by both eyewitness testimony and a surveillance video viewed by the jury multiple times. Instead, the crux of the case centered on Defendant's mens rea, specifically his state of mind prior to and at the time of the homicide.

**{5}**      The defense theory was that Defendant—who is Black—did not plan to shoot Victim—who was white—and that Victim provoked Defendant into doing so by Victim's alleged use of the n-word during their brief street encounter and the threat Defendant felt when Victim and Nico followed him so closely. The jury accordingly was instructed on a wide range of options for homicide—from deliberate intent murder down to voluntary manslaughter—with defense counsel inviting the jury to return a verdict not of acquittal but of voluntary manslaughter based on a defense of provocation. Hereafter, additional procedural facts are provided as needed.

## II.    DISCUSSION

**{6}**    As indicated at the outset, Defendant invokes the procedures outlined in *Franklin*, 1967-NMSC-151, ¶ 9, and *Boyer*, 1985-NMCA-029, ¶¶ 17-24, in seeking reversal and a new trial based on claims of evidentiary error and judicial bias or, alternatively, cumulative error resulting from the combined effect of the individual errors alleged. As explained herein, we are not persuaded by either approach.

### A.    Standard of Review

**{7}**    We "generally review evidentiary matters for an abuse of discretion." *State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Sanchez*, 2020-NMSC-017, ¶ 21, 476 P.3d 889 (internal quotation marks and citation omitted). In the authentication context, it is not an abuse of discretion to exclude evidence when its proponent fails to show "by a preponderance of the evidence [that it is] what it purports to be." *See State v. Jesenya O.*, 2022-NMSC-014, ¶ 10, 514 P.3d 445 (internal quotation marks and citation omitted). Also measured by an abuse of discretion standard is a trial court's denial of a motion seeking the court's recusal. *See State v. Riordan*, 2009-NMSC-022, ¶ 6, 146 N.M. 281, 209 P.3d 773 ("[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion.").

### B.    Alleged Evidentiary Errors

**{8}**    In service of his provocation defense, Defendant argues that the district court erred in excluding two items of evidence bearing on Victim's alleged "racial aspersions" in the form of the n-word: (1) a screenshot of a retweet of another person's tweet that contained a variant of the n-word, a retweet posted on a Twitter account allegedly belonging to Victim, and (2) testimony as to what Victim said to Defendant in the moments leading up to the shooting, testimony which, Defendant tells us, would have indicated that Victim used a racial slur that "mirrored the retweets." Addressing each of these claims in turn, we see no error, and certainly no reversible error, in either of the evidentiary points as presented.

### 1.    Exclusion of the retweet for lack of authentication

**{9}**    Witness Andrew Gillespie (Andrew) was one of the baseball teammates who accompanied Victim on the night of the shooting and who testified on behalf of the State at trial. Consistent with the testimony of other prosecution witnesses who knew Victim, Andrew stated on direct examination that he never heard or knew of Victim to use any racial slurs or "those sorts of words." Apparently attempting to impeach that testimony, Defendant sought to introduce the aforementioned screenshot of the retweet Defendant attributed to Victim. As we discuss next, the foundational evidence offered by Defendant to demonstrate the authenticity of the retweet was glaringly insufficient for that purpose,

despite "the low threshold of proof" required to properly authenticate any writing, digital or otherwise. *See Jesenya O.*, 2022-NMSC-014, ¶ 33; *id.* ¶ 18 (clarifying that "the authentication of social media evidence is governed by the traditional authentication standard set out in Rule 11-901[(A) NMRA], which requires the proponent to offer 'evidence sufficient to support a finding that the [evidence] is what the proponent claims it is'" (second alteration in original) (citation omitted)).

**{10}** The sparse foundational showing made by Defendant at trial consisted solely of Andrew's acknowledgement that he began to follow Victim on Twitter some two months *after* the retweet was posted. Notably, Andrew "ha[d] no idea" of Victim's username on Twitter and did not recognize Victim's *actual* account handle when it was displayed to him on defense counsel's laptop computer screen. Such was the sum and substance of Andrew's limited testimony on the issue.

**{11}** Beyond that, Defendant's foundational presentation included none of the types of evidence identified in the 2012 Rule 11-901(B) as sufficient to authenticate an item of evidence. Nevertheless, a competent foundation fully reliant on Rule 11-901(B) was laid by the state in 2020 district court proceedings for authenticating screenshots of Facebook Messenger messages involved in *Jesenya O.*, 2022-NMSC-014, ¶¶ 26, 28, 33. Defendant's proffer here fell far short of showing that it was Victim who posted the retweet or, for that matter, that Victim was the owner of the Twitter account on which the retweet appeared. Among the indicia of authenticity missing here but present in *Jesenya O.* were identifying markers on the screenshot such as the account holder's username and profile photo, testimony from a witness with "personal knowledge of . . . the accuracy of the screenshots," and "contextual clues" in the content of the post that demonstrated its authenticity. *Id.* ¶¶ 7, 24-29. In the absence of *any* form of reliable authentication evidence explaining what the retweet represented or how it came to be created, the district court's ruling to exclude the retweet was not error, much less an abuse of discretion. *See id.* ¶ 10.

**{12}** We decline to consider Defendant's novel contention—unsupported by any citation of authority either at trial or on appeal—that he should have been allowed to elicit authentication-related testimony from one of the forensic experts who was retained by and testified on behalf of the State in this very case. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

## 2. Exclusion of Defendant's testimony regarding Victim's on-the-scene statements

**{13}** We turn next to Defendant's undeveloped assertion that the district court erred in excluding his testimony as to what Victim said to him during their brief encounter leading up to the shooting. Although vaguely referencing the claim in a single subheading of his brief in chief, Defendant does not return to the claim in the brief's accompanying text, much less develop any arguments with respect to the hearsay and other evidentiary issues implicated by the claim. Here too, we need not review the merits of Defendant's assertion. *See id.* (cautioning that "to present an issue on appeal

for review, an appellant must submit *argument* and *authority* as required by rule" (first emphasis added)); *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**{14}** Even so, we note that any error in this regard would be harmless in light of Defendant's concession later in his testimony that, although he heard Victim say something, he "couldn't make out what . . . exactly" Victim was saying. This hardly gives rise to provocation, a defense which comes into play only in circumstances that "arouse anger, rage, fear, sudden resentment, terror or other extreme emotions" sufficient to "affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." UJI 14-222 NMRA. In this case, as in *State v. Salazar*, Defendant's own testimony "precludes the possibility that he acted out of provocation," 1997-NMSC-044, ¶ 53, 123 N.M. 778, 945 P.2d 996, at least as a result of anything Victim may have said during the encounter.

**{15}** Moreover, even if Victim's conversation with Defendant prior to the shooting included a race-based epithet heard by Defendant, that still would not provide a basis for a provocation defense under New Mexico law. *See Sells v. State*, 1982-NMSC-125, ¶ 7, 98 N.M. 786, 653 P.2d 162 ("[W]ords alone, however scurrilous or insulting, will not furnish adequate provocation to require submission of a voluntary manslaughter instruction"); *id.* (drawing a distinction between "mere insulting words" and "informational words" whose substance and meaning impart the "sudden disclosure of [an adequately provocational] event," with only the latter, if accompanied by "ensuing arguments and other actions of the parties," providing support for a provocation defense).

## C.    Alleged Judicial Bias at Sentencing

**{16}** Defendant's claim of bias on the part of the district court judge is a claim that appears to be founded on nothing more than the court's adverse evidentiary rulings discussed above and its expressed view at the sentencing hearing that "zero evidence of provocation" or "of a racially motivated crime" was presented at trial. While, technically speaking, it may have been better for the district court to say that no such *competent* evidence was presented at trial, the court's comment was nonetheless more accurate than not. And though Defendant appears to question the court's motivation in "announcing to a courtroom full of observers and media" that no "evidence of racial slurs" was elicited at trial, the court's comment was appropriate when viewed in context, as it was directly responsive to defense counsel's oral motion to vacate the first-degree deliberate intent murder conviction.

**{17}** The decisive point is that a judge's personal bias against a litigant "cannot be inferred from an adverse ruling or the enforcement of the rules of criminal procedure [or evidence]," *State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312, but instead requires a showing of some "extrajudicial conduct or incident," *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 421 & n.159, 96 N.M.155, 629 P.2d 231, a showing conspicuously absent here. As this Court explained in *United Nuclear*,

"The purpose of the extra-judicial source requirement concerns the origin of the judge's bias rather than the place of its expression. Certainly, judicial rulings or *comments on the evidence* made during the course of a proceeding do not fall within the rule. However, if a judge's statements or conduct during a trial refer to or reflect bias or prejudice which arose outside of his judicial duties, then the extrajudicial source rule is satisfied and recusal may be required."

*Id.* (emphasis added) (citation omitted). The "in-court opinion[]," *id.*, offered by the district court at the sentencing hearing was both consistent with the trial evidence and unobjectionable from a recusal standpoint.

**{18}** Having concluded that the district court's sentencing comments were proper, we need not address the proper remedy for a trial judge's alleged bias-laden sentencing remarks.

## D.    Cumulative Error

**{19}** Defendant argues that the foregoing claims of error cumulatively warrant reversal of his convictions and a new trial. However, there being no showing of error, the cumulative error doctrine is inapplicable. *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (noting that there is no cumulative error where there is no error).

## III.    CONCLUSION

**{20}** We conclude that the alleged errors asserted by Defendant, taken individually or cumulatively, are lacking in merit. We thus affirm Defendant's convictions.

**{21}   IT IS SO ORDERED.**

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**